**Rebecca T. HALBROOK, Plaintiff,**

v.

**REICHHOLD CHEMICALS, INC., Defendant.**

**No. 89 Civ. 0952 (KC).**

United States District Court, S.D. New York.

April 16, 1990.

---

Judith Vladeck, Vladeck, Waldman, Elias & Engelhand, New York City, for plaintiff.

Theodore Rogers, Sullivan & Cromwell, New York City, for defendant.

## MEMORANDUM AND ORDER

CONBOY, District Judge:

Plaintiff Rebecca T. Halbrook, a former assistant general counsel of defendant Reichhold Chemicals, Inc. ("Reichhold"), brought this action alleging that Reichhold discriminated against her on the basis of her sex in the terms and conditions of her employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), by denying her promotion to the position of General Counsel and by creating working conditions that compelled her to resign. Reichhold moves for summary judgment and to exclude evidence of statements by Reichhold's former General Counsel on hearsay grounds. Halbrook moves *in limine* to exclude evidence assertedly derived from her settlement discussions with Reichhold management, pursuant to Rule 408 of the Federal Rules of Evidence, and to exclude an evaluation of Reichhold's legal department on relevance grounds. Substantially for the reasons set forth below, we deny the motion for summary judgment, and defer until trial consideration of the evidentiary motions.

## BACKGROUND

From 1982 until October, 1987, plaintiff Rebecca T. Halbrook was second-in-com-

mand in the office of General Counsel at Reichhold. Halbrook reported to Paul Dixon, General Counsel of Reichhold. Dixon, in turn, reported to C. Robert Powell, CEO of Reichhold until 1988. In August, 1983, Reichhold hired Charles Lorelli, who was selected and trained by and at first worked under the supervision of Halbrook. In May, 1984, Halbrook was promoted to Assistant Secretary of Reichhold. In April, 1986, Lorelli was promoted to Assistant General Counsel and Assistant Secretary, thus sharing the same title as Halbrook. During this time, both Lorelli and Halbrook were the subject of various compliments and criticism from persons at Reichhold with whom each worked. Additionally, however, Halbrook alleges that she was subject to several incidents of sexual harassment: she was told to read a book on women's alleged fear of success, told not to let women's issues get in her way and forced to strike a "bargain" with management under which she promised to refrain from raising women's issues in exchange for management's ending its harassment of her about maternity leave.

In September, 1987, Lorelli was promoted to General Counsel. Shortly thereafter, Halbrook ran into Dixon in a local delicatessen and complained to him about this decision in general terms that did not specifically refer to sex discrimination. Dixon volunteered that it was "intentional that there are no women in top management at Reichhold," and that Eric Pogue, Vice President of Human Resources at Reichhold, had stated to Dixon that "women are hard to manage." Dixon asserted that, as a member of the corporation's operating committee, he had "been privy to matters about which [Halbrook] had no idea." Halbrook noted this conversation in the form of a file memo to herself. Proposed Trial Exhibit 29.

During conversations which included settlement negotiations, Halbrook complained directly to Pogue about Lorelli's promotion, alleging that it was discriminatory. According to file memos written by Halbrook after these conversations, Halbrook expressed to Pogue her fear of being summarily discharged, which would have made finding work more difficult, and promised Pogue to continue to act professionally in Reichhold's employ. Proposed Trial Exhibits XX and YY. Halbrook also indicated that she felt deeply humiliated and embarrassed about having been passed over for the position of General Counsel by someone who had been under her supervision, and that staying at Reichhold would be very damaging to her career. Proposed Trial Exhibit XX.

Thomas Mitchell, Executive Vice President of Reichhold, speculated to Halbrook that a new position of General Counsel of Reichhold's parent holding company, Dainippon Ink and Chemical Co. ("Dainippon"), might be created, but conceded that it was unlikely that Halbrook would be appointed to any position above that of Reichhold General Counsel, having just been passed over for that post. Another attorney position was open at that time in a Reichhold subsidiary, but at less than Halbrook's then-current salary. Indeed, the woman who formerly held the position had applied for a transfer to Reichhold's legal department, indicating that the position at the subsidiary was clearly inferior to Halbrook's at Reichhold. According to Reichhold, other management jobs at Reichhold might have eventually become available to Halbrook.

Subsequent to Lorelli's promotion, Halbrook alleges, she lost the daily contact with Reichhold division managers and staff department heads to which she had been accustomed, was dropped from the circulation list for communications sent to corporate officers, was given no new assignments during October, 1987, and was informed that, in the future, she would no longer supervise the General Counsel's paralegals. In November, 1987, Halbrook left Reichhold. She now works for Revlon, Inc., for an annual salary of $115,000 as compared to Lorelli's current salary of $165,000.

## DISCUSSION

I. *Reichhold's Motion for Summary Judgment*

Reichhold moves for summary judgment on both Halbrook's claim of discriminatory

failure to promote, and her claim of constructive discharge. We address each of these claims in turn.

Summary judgment may be granted only when the moving party can establish, based on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The Court must first look to the substantive law of the case to determine which facts are material. Only disputes over material facts will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of establishing that no genuine dispute as to material facts exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the opposing party to show that a genuine issue of fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Ultimately, "[i]n considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986)), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

Thus, a defendant seeking summary judgment in an employment discrimination case "has the burden of showing that the absence of discrimination is beyond dispute or that an ultimate inference of discrimination is entirely unsupported by any evidence." *Obadiah v. Western Union Int'l*, 41 Fair Empl.Prac.Cas. (BNA) 1361, 1364, 1986 WL 10477 (S.D.N.Y.1986). Where the non-moving party bears the ultimate burden of proof and has produced facts making out a *prima facie* case, she can defeat a summary judgment motion by showing that legitimate, non-discriminatory reasons for a job action were merely pretextual. *Montana v. First Federal Savings & Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989). To survive a summary judgment motion, the non-moving plaintiff need not show that legitimate reasons were entirely absent from the allegedly discriminatory calculus but merely that some discriminatory reasons may have played a role in the employment decision. *Id.*

In its summary judgment papers, Reichhold does not dispute that Halbrook has made a *prima facie* showing of employment discrimination. A *prima facie* case consists of showing that the plaintiff (i) belongs to a protected group, (ii) applied for and was qualified for a position for which the employer was seeking applicants, (iii) was rejected despite qualifications and (iv) the position was filled by or held open for someone not belonging to the protected group. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Halbrook, a female and thus a member of a protected group, and apparently qualified for the position of General Counsel, was denied a promotion to a position filled by a male.

Once a *prima facie* showing is made, the burden shifts to the defendant to articulate some legitimate non-discriminatory reason for the employment action. *Id.* Reichhold articulates several non-discriminatory reasons for promoting Lorelli instead of Halbrook, including Lorelli's allegedly superior qualifications and certain complaints about Halbrook's work. Consequently, in a trial setting, the burden would shift back to Halbrook to prove by a preponderance of the evidence that the legitimate reasons offered by Reichhold are pretextual. *Id.; see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Krodel v. Young*, 748 F.2d 701, 706 (D.C. Cir.1984), *cert. denied*, 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985).

■ At the summary judgment stage, however, Halbrook need only show that material issues of fact remain as to wheth-

er Reichhold's reasons for not promoting her are pretextual. Because intent and state of mind are at issue in determining whether or not an employer's reasons are pretextual, summary judgment is ordinarily inappropriate at this stage of the proceedings. *Montana v. First Federal Savings & Loan Ass'n of Rochester,* 869 F.2d at 103. We believe that Halbrook has presented sufficient evidence to create a triable issue of fact as to pretext. She has alleged, for example, that Powell and Pogue, who assertedly were responsible for Lorelli's elevation to General Counsel, had scant knowledge of the legal department; that Lorelli's personnel file was not so demonstrably superior to Halbrook's so as to justify his promotion; that Dixon's recommendation as to his own successor was similarly not conclusive justification; that Halbrook was better qualified for the job; and that women were statistically underrepresented at Reichhold. Because sex discrimination "often arises out of very subtle stereotyping that may reflect a [biased] ... view of women ... and also because employers have become sophisticated enough to shield true animus behind facially neutral documentation," *Lenihan v. City of New York,* 636 F.Supp. 998, 1009 (S.D.N.Y. 1985), we decline to find at this stage that Halbrook's proffered evidence is insufficient.

We further observe that Halbrook has offered direct evidence of discriminatory treatment at Reichhold, in addition to the assertedly discriminatory failure to promote her to General Counsel. For example, she claims that she was warned not to let women's issues "get in the way"; harassed about whether or not she would return to Reichhold after her maternity leave; told to read a book about women's supposed fear of success; and ridiculed when she requested an appointment to an administrative committee. Reichhold argues that Halbrook's direct evidence of dis-

criminatory treatment at Reichhold is minimal, remote, and lacking in probative value, primarily because it occurred long before Lorelli's promotion to General Counsel. Of course, this argument goes to the weight of the evidence, an issue not properly resolved on summary judgment. Moreover, where a plaintiff provides direct evidence of discriminatory motive, the burden shifts to the employer to show that it would have made the same decision absent such a motive. *Price Waterhouse v. Hopkins,* — U.S. ——, 109 S.Ct. 1775, 1786, 104 L.Ed.2d 268 (1989). Thus, the direct evidence presented by Halbrook defeats Reichhold's motion for summary judgment on the question of discriminatory failure to promote.

■ Reichhold's motion for summary judgment on Halbrook's constructive discharge claim presents a closer question. Evidence of a discriminatory refusal to promote is not always sufficient to support a finding of constructive discharge, *Wardwell v. School Bd. of Palm Beach County,* 786 F.2d 1554, 1558 (11th Cir.1986), because generally Title VII requires employees to attack discrimination from within existing employment relations, *Cowan v. Prudential Ins. Co.,* 703 F.Supp. 177, 192 (D.Conn.1986). Thus, constructive discharge occurs only when an employer " 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.' " *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2d Cir.1983) (quoting *Young v. Southwestern Savings & Loan Ass'n,* 509 F.2d 140, 144 (5th Cir.1975)). Because the standard for constructive discharge requires a determination of how a reasonable person would behave "in the employee's shoes," *Pena,* 702 F.2d at 325, "the issue of whether a constructive discharge has occurred should generally be left to the trier of fact." *Bailey v. Binyon,* 583 F.Supp. 923, 929 (N.D.Ill.1984).[1] On the other hand, the

**1.** *See also Wulach v. Bear, Stearns & Co.,* 48 Fair Empl. Prac. Cas. (BNA) 727, 731, 1988 WL 123632 (S.D.N.Y.1988) (allegations of having little to do except stuffing envelopes, being humiliated and berated, being paid less for equal work, and being passed over for promotion create a factual dispute precluding summary judg-

ment as to constructive discharge); *Bimbo v. Burdette Tomlin Memorial Hosp.,* 42 Fair Empl. Prac. Cas. (BNA) 192, 194, 1986 WL 15319 (D.N. J.1986) (demotion from head nurse to staff nurse raises factual issue concerning constructive discharge).

"reasonable person" standard is an objective standard that does not depend on such traditionally triable issues as the subjective reaction of any particular employee to changed working conditions. *Nobler v. Beth Israel Medical Center*, 702 F.Supp. 1023, 1030 (S.D.N.Y.1988) (employee's subjective feelings about his condition do not justify finding of constructive discharge).[2]

■ To support her claim that her working conditions were intolerable after Lorelli's promotion, Halbrook alleges first that she found herself with little to do after Lorelli's promotion, and stripped of concrete responsibilities and various indicia of stature. Second, she asserts that Lorelli's promotion put her in an intolerable position, forcing her to be humiliated on a day-to-day basis by having to work with the very supervisors who discriminatorily denied her promotion. Third, Halbrook claims that she was forced to quit because Lorelli's promotion tolled "the death knell for her efforts to become a corporate general counsel." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pltf. Mem.") at 66. We consider each of these allegations in turn, bearing in mind that we must draw all reasonable inferences against Reichhold.

With respect to the asserted change in job responsibilities and stature, evidence of a reduction in job responsibilities to the point where an employee has nothing meaningful to do with her time can lead to an inference of constructive discharge; yet, a mere reduction or change in job responsibility based on the reasonable business decision of an employer does not constitute constructive discharge.[3] Halbrook alleges that, presumably as a direct result of the Lorelli promotion, some Reichhold officials stopped calling her, she was dropped from a circulation list, warned that she might be stripped of certain administrative responsibilities, including supervision of four paralegals, and not given new assignments. Reichhold responds that Halbrook's workload was not reduced, and that she was not relieved of responsibility for the paralegals. Clearly, there is a triable issue of fact as to whether Halbrook's responsibilities were sufficiently changed or reduced so as to make her job intolerable.

As for the alleged humiliations Halbrook suffered, it is well established that discriminatory denial of a promotion, without more, cannot amount to constructive discharge. *Muller v. United States Steel Corp.*, 509 F.2d 923, 929 (10th Cir.), *cert. denied* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). Rather, working conditions must be "intolerable" so as to create an aggravated sense of humiliation.[4] We do not believe that reducing an employee's workload and removing her from certain circulation lists rises to this level. "[A]lmost daily, face to face dealings with the alleged wrongdoer," on the other hand, may engender humiliation rising to the level of constructive discharge. *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 120 n. 4 (1st Cir.1977).

Halbrook speculates that she would have suffered humiliating face-to-face confrontations with Pogue and Powell, two individu-

---

**2.** *See also Grant v. Morgan Guar. Trust Co.*, 638 F.Supp. 1528, 1539 (S.D.N.Y.1986) ("mere disappointment cannot make working conditions so intolerable that a reasonable person would resign").

**3.** *Compare Wulach*, 48 Fair Empl.Prac.Cas. at 729 (for four months prior to termination, plaintiff, a vice-president of an investment bank, stuffed and labelled envelopes; additionally, she was berated and humiliated at a meeting and her desk was broken into; *prima facie* showing of constructive discharge) *with Lombardo v. Oppenheimer*, 701 F.Supp. 29, 31 (D.Conn.1987) (where change in plaintiff's position was result of general reorganization, not isolated incident of mistreatment, no constructive discharge).

**4.** *See Wardwell v. School Bd. of Palm Beach County*, 786 F.2d at 1558 (frustration and humiliation experienced by assistant director denied promotion to director, together with increased workload, did not rise to the level of constructive discharge); *Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir.1985) (supervisor having loudly mentioned fact of employee's being polygraphed and other harassment do not constitute intolerable working conditions); *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65 (5th Cir. 1980) (compensating female worker at a lower level than males does not constitute constructive discharge).

als responsible for Lorelli's promotion, with increasing frequency after October 1, 1987, the date the legal department was assigned to Pogue's supervision. Yet, surprisingly, she alleges neither that she had increased contact with Pogue or Powell, nor that what contacts she had were humiliating.[5] In view of the fact that even where Title VII clearly outlaws discriminatory practices, the standard remedy under the Act is for an employee to stay and fight, *see, e.g. Hopkins v. Price Waterhouse*, 825 F.2d 458, 473 (D.C.Cir.1987), *rev'd on other grounds,* —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Bourque v. Powell Elect. Mfg. Co.*, 617 F.2d 61, 66 (5th Cir. 1980), and that "mere speculation or conjecture" will not suffice to defeat summary judgment, *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), Halbrook's offering of proof on the alleged humiliation, taken by itself, would be legally insufficient to establish working conditions so intolerable as to constitute constructive discharge. Nevertheless, her alleged humiliation and embarrassment over losing the General Counsel position to someone she herself trained at Reichhold is a factor to consider in determining whether conditions at Reichhold were so intolerable for Halbrook so as to force her to resign.

■ Finally, with regard to whether Halbrook had other chances for promotion at Reichhold, we note that, while "an employer has not effected a constructive discharge merely because an employee believes that she has limited opportunities for advancement," *Downey v. Isaac,* 622 F.Supp. 1125, 1132 (D.D.C.1985), *aff'd* 794 F.2d 753 (D.C.Cir.1986), dashing reasonable expectations of career advancement may create intolerable working conditions that rise to the level of constructive discharge. *Hopkins,* 825 F.2d at 458. In *Hopkins,* a member of an accounting firm was denied partnership but told that she could remain as a senior manager. *Id.* at 463. The Court of Appeals found that this was effectively a "career-ending" action that amounted to constructive discharge, *id.* at 473, inasmuch as it was "regular practice and custom" that candidates rejected for partnership routinely left the firm. *Id.* at 463.[6]

Both parties speculate as to what Halbrook's chances for promotion would have been had she remained at Reichhold. Reichhold would distinguish *Hopkins* on the grounds that promotion to General Counsel at Reichhold was not an "up-or-out" decision. Whereas the plaintiff in *Hopkins* was "told she would not be renominated for partnership and thus had no place to advance within the organization, ... the decision to name Lorelli general counsel in no way disqualified Halbrook from advancing to other similar senior management positions." Memorandum of Defendant Reichhold Chemicals, Inc. in Support of Its Motion for Summary Judgment and to Exclude Hearsay Statement ("Def. Mem.") at 26. Halbrook asserts in response that the likelihood of promotion to senior management positions within Reichhold was "chimerical," Pltf. Mem. at 72,[7]

---

5. She offers proof only that Pogue and Powell worked closely with Halbrook in the past. Pltf. Mem. at 76. Elsewhere, Halbrook asserts that "[d]uring the month of October, 1987, there was no merger or divestiture activity involving Reichhold. Halbrook's work load in the entire spectrum of the corporate law practice dropped to virtually nothing." *Id.* at 20. This indicates to us that the record presently shows that her humiliation was more feared than experienced.

6. In its appeal to the Supreme Court, Price Waterhouse did not challenge the Court of Appeals' conclusion that the refusal to repropose Hopkins for partnership amounted to a constructive discharge. *Price Waterhouse v. Hopkins,* 109 S.Ct. at 1781 n. 1.

7. Specifically, Halbrook asserts that during the course of his deposition, Powell contradicted his prediction of dramatically increasing business for Reichhold, and that in the two years since Lorelli's promotion, Reichhold has engaged in personnel cutbacks. Pltf. Mem. at 72. Additionally, Halbrook argues that she had no realistic chance to be promoted to other senior level positions. *Id.* For example, the position of General Counsel at Dainippon did not even exist at the time, and, presumably, would have been at a *higher* level than the one for which she had just been passed over. *Id.* Finally, Halbrook points to her direct experience with the allegedly sexist *animus* at Reichhold as evidence of the reasonableness of her belief that promotion was unlikely. *Id.* at 74. Although Halbrook

and that Lorelli's promotion over her therefore effectively ended her chances of advancement within Reichhold. We conclude that there are material questions of fact as to Halbrook's remaining opportunities within Reichhold. We cannot decide, based on the record before us, whether or not Reichhold's failure to promote Halbrook is comparable to Price Waterhouse's failure to promote Hopkins.

Although we have considered Halbrook's constructive discharge claim in three parts to facilitate comparison with other cases, we note that Halbrook's constructive discharge claim must be considered as a whole. She has not alleged "merely" a reduction in workload; neither has she alleged "merely" humiliation. Rather, she has alleged a combination of factors which must be considered as such. Taken as a whole, Halbrook's factual allegations in support of her constructive discharge claim, including the change in responsibilities, reduction in workload, humiliation and embarrassment, and the absence of any further chance of advancement within Reichhold, raise a reasonable inference that she was constructively discharged, precluding summary judgment on her constructive discharge claim. Accordingly, Reichhold's motion for summary judgment is denied.

## II. *Evidentiary Motions*

The remaining motions currently pending before the Court involve evidentiary issues. First, Reichhold moves to exclude Dixon's statements to Halbrook, made at the delicatessen, on hearsay grounds. Halbrook argues that the statements are an admission by an agent of a party-opponent, admissible pursuant to Rule 801(d)(2)(D) of the Federal Rules of Evidence. Reichhold contends, however, that Dixon was no longer actively employed by Reichhold, since he had been given notice of termination, effective two days after the statement was made, and that the statement was not made in the course of his employment at Reichhold. Although it appears that Dixon made the statement while he was still employed by Reichhold, it is not clear from the record before us whether or not Dixon made the statement in the course of his employment.[8]

Second, Halbrook seeks to exclude her "settlement negotiations" with Pogue, including the handwritten file memos she wrote following those conversations. Proposed Trial Exhibits XX and YY. Halbrook also moves to exclude an evaluation, prepared after Halbrook left Reichhold, of Reichhold's legal department. Proposed Trial Exhibit NN. Although the document embodies an evaluation of the department covering Halbrook's tenure there, Halbrook argues that, because the document could not have had a bearing on Reichhold's decision to promote Lorelli, it is irrelevant and therefore inadmissible.

Because we believe that these evidentiary issues are best resolved on a full trial record, we defer consideration of these motions until trial.

### CONCLUSION

Reichhold's motion for summary judgment is denied. The evidentiary motions are deferred until trial. The matter will be placed on the Court's Ready–Trial Calendar as of Tuesday, May 8, 1990.

SO ORDERED.

---

obviously cannot rely on hindsight in evaluating what her chances for promotion at Reichhold would have been, we believe that a reasonable person in Halbrook's position after Lorelli's promotion might have concluded that she effectively had no more chances for advancement within Reichhold.

8. Reichhold also seeks to exclude a file memo Halbrook wrote to herself, recording her conversation with Dixon. We agree that this memo appears to be hearsay, not admissible to "rebut an express or implied charge ... of recent fabrication," Fed.R.Evid. 801(d)(1)(B), because, by the time she wrote the memo, Halbrook had probably already *decided to sue* Reichhold, giving rise to a motive to fabricate. However, we reserve final decision on this issue until trial.