**Richard LUDOVICY,**
**Plaintiff–Appellant,**

v.

**DUNKIRK RADIATOR CORPORATION,**
**Defendant–Appellee.**

No. 465, Docket 90–7593.

United States Court of Appeals,
Second Circuit.

Argued Nov. 15, 1990.

Decided Dec. 26, 1990.

R. William Stephens, Buffalo, N.Y. (Raichle, Banning, Weiss & Stephens, of counsel), for plaintiff-appellant.

Michael R. Moravec, Buffalo, N.Y. (Phillips, Lytle, Hitchcock, Blaine & Huber, John J. Christopher, of counsel), for defendant-appellee.

Before FEINBERG, PIERCE and MINER, Circuit Judges.

PER CURIAM:

Plaintiff Richard Ludovicy appeals from a judgment entered in accordance with a Memorandum and Order of the United States District Court for the Western District of New York, John T. Elfvin, J., dated June 15, 1990, granting defendant Dunkirk Radiator Corporation's motion for summary judgment and dismissing the action. Ludovicy alleged that Dunkirk improperly terminated his employment on account of his age, in violation of the Age Discrimination in Employment Act, (ADEA) 29 U.S.C. § 621 et seq. The district court found that Ludovicy failed to establish a prima facie case because he did not show that his discharge occurred under circumstances giving rise to an inference of age discrimination. The court held that derogation of seniority rights is not by itself sufficient to raise such an inference. We agree, and we affirm.

Ludovicy, who had worked for Dunkirk since September 1972, was discharged at the age of 53 in April 1987. In January 1987, Dunkirk had determined that declining economic conditions required closing its foundry and coreroom operations, thereby eliminating the jobs of over 75 foundry employees, including plaintiff.

Foundry employees, as well as a number of other Dunkirk employees, were represented by Local 2305 of the United Steelworkers of America. Following Dunkirk's announcement of the closing, Dunkirk entered into a "Memorandum of Understanding" with Local 2305. The Memorandum modified certain provisions of the collective bargaining agreement, including an early retirement option, recall rights and "bumping" based on seniority. Ludovicy and Dunkirk disagree as to whether the Memorandum expanded or limited employees' rights under the collective bargaining agreement. Because we find that Ludovicy failed to establish a prima facie case even if we accept his interpretation of these two agreements, we utilize that interpretation below despite our doubts as to its validity.

The Memorandum of Understanding offered an early retirement option to all bargaining unit employees who would have completed at least 15 years of service by July 1, 1987 and who would be between the ages of 55 and 62 on that date. The early retirement option had to be elected by March 1, 1987. An employee who did not take early retirement but was later terminated would lose various benefits. The Memorandum permitted employees whose jobs were eliminated to "bump" into other jobs at the plant on the basis of plant-wide seniority, displacing other employees with less seniority. An employee who "bumped" into a new job was entitled to a 28–day trial period before management could terminate him for unsatisfactory performance. The number of jobs available for "bumping" under the Memorandum was smaller than the number previously available for seniority-based "bumping" under the collective bargaining agreement. The Memorandum required Dunkirk to fill any bargaining unit openings during the next two years from the pool of terminated employees, but left the order of hire to the discretion of management. The collective bargaining agreement had required that employees be recalled in order of seniority.

Dunkirk proceeded to close the foundry and reduce the number of bargaining unit employees in accordance with the Memo-

randum of Understanding. Six employees elected the early retirement option. Sixteen foundry employees used their seniority to "bump" into other positions at Dunkirk. More than 75 employees, including plaintiff, were terminated. The number of bargaining unit employees was reduced from 142 on January 1, 1987 to 58 on July 1, 1987. The foundry was not reopened and Dunkirk did not hire any bargaining unit employees during the two-year recall period.

As part of his prima facie case, Ludovicy must show that "the discharge occur[red] in circumstances giving rise to an inference of age discrimination." *Montana v. First Federal Savings & Loan Association*, 869 F.2d 100, 105 (2d Cir.1989). Ludovicy does not present any evidence to show that Dunkirk made an individual decision to treat him less favorably because of his age. Instead, he contends that Dunkirk disfavored older employees by the way it chose to structure its reduction in force.

It is undisputed that Dunkirk had an older work force after its reduction in force than it did before. For example, the foundry and coreroom employees on January 1, 1987 were, on average, less than 39 years old, and the average age of bargaining unit employees in the entire plant was between 40 and 41. On July 1, 1987, after the elimination of the foundry and coreroom, the average age of bargaining unit employees had increased to over 47. There is no statistical evidence to show that Dunkirk used the occasion of its reduction in force to rid itself of its older employees in disproportionate numbers. To the contrary, less than half of Dunkirk's bargaining unit employees on January 1, 1987 had reached 40, the age at which ADEA protection begins, 29 U.S.C. § 631(a), but more than three-quarters of the post-reduction employees were 40 or over. Moreover, the foundry workers who retained jobs with Dunkirk were, on average, almost 49 years old, while the bargaining unit employees who were terminated had an average age of less than 35.

Ludovicy contends that despite these statistics, age discrimination can be inferred

from the terms of the Memorandum of Understanding and various actions taken by Dunkirk in connection with its reduction in force. Some of Ludovicy's contentions are without factual support, and some border on the frivolous. For example, Ludovicy claims that the early retirement provision of the Memorandum "practically chased the older workers out of the plant." In fact, only six of 14 eligible employees elected the early retirement option. Ludovicy himself met neither the age nor the length of service condition for eligibility, and he argues in another context that the early retirement option was "not sufficiently lucrative to even tempt" eligible bargaining unit employees elsewhere in the plant into retiring. Similarly, Ludovicy alleges that Dunkirk fired two employees who could not read plans and blueprints in order to frighten older employees, most of whom lacked those skills, into taking early retirement. Ludovicy also alleges, however, that Dunkirk retained two employees who could not read and write in positions for which they were unqualified beyond the 28–day trial period in order to keep older employees from filing their positions. Although Ludovicy does not mention their ages in his argument, the record shows that the two employees allegedly fired to frighten the older employees were 37 years old and 44 years old, while the two employees allegedly retained to avoid hiring older employees were 42 years old and 47 years old.

Several of Ludovicy's other contentions, however, deserve somewhat more discussion. They are based on Ludovicy's claim that because seniority is inextricably related to age, the derogation or elimination of seniority rights raises an inference that the employer is impermissibly discriminating against its older employees. To support his claim, Ludovicy points out that the Memorandum of Understanding reduced the number of positions available for "bumping" on the basis of seniority and eliminated recall rights based on seniority. He also states that Thomas Reed, Dunkirk's president, "admitted" that as seniority increases, so does age. Reed also acknowledged that as a group, people with high seniority are generally older than people with low seniority, and that this was true at Dunkirk. Dunkirk's president also stated that he wanted to eliminate recall rights based on seniority in part because he did not want to be forced to give the person with the most seniority, who may not have been able to perform the job, a 28–day trial period. Dunkirk's plant manager, who was also the former personnel manager, made similar statements. Taken together, Ludovicy argues, the provisions of the Memorandum and the testimony regarding seniority would allow a reasonable factfinder to conclude that by eliminating and restricting seniority rights, Dunkirk discriminated against the older, more senior employees in violation of the ADEA. We disagree.

After an employee is hired, his years of service or "seniority" and his age increase together. However, it is obvious that because employees are hired at different ages, younger employees may readily have more seniority than older employees. For example, Ludovicy began working for Dunkirk when he was 39 years old, and had accumulated only 14 years of service when he was terminated at age 53. In contrast, the Dunkirk employee immediately above Ludovicy on the seniority list had 14 years of service at the age of 34. In fact, most of the Dunkirk employees who had more seniority than Ludovicy were younger than he was.

Because "seniority as a function of age is dependent upon the age at which the employee began to work for the company," *Holt v. Gamewell Corp.*, 797 F.2d 36, 38 (1st Cir.1986), employees with greater seniority are not necessarily older than employees with less. Moreover, greater seniority does not mean that an employee has necessarily reached the age of 40, the minimum age for protection under the ADEA. See 29 U.S.C. § 631(a); see also *Williams v. General Motors Corp.*, 656 F.2d 120, 130 n. 17 (5th Cir.1981), cert. denied, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). We therefore agree with the district court that elimination or derogation of seniority rights is not sufficient *by itself* to raise an inference of age discrimination in violation of the ADEA.

Ludovicy presents insufficient evidence for a reasonable factfinder to conclude that more senior employees at Dunkirk were within the protected age group and were discriminated against because they were older than the less senior employees. Ludovicy does claim that seniority recall rights were eliminated to avoid the anticipated recall of the 11 most senior terminated employees, and that these employees had an average age of 50. However, he does not identify the basis for his calculations, and the record reveals that seven of the 11 terminated employees with the greatest seniority were under age 40. The testimony of management that it is generally the case that more senior employees were older than less senior employees is likewise insufficient, in the absence of other evidence, to show that the derogation of seniority rights related to age-based discrimination against protected employees. We do not doubt that "[t]here may well be cases in which seniority is simply a code word for age discrimination," *Arnold v. United States Postal Service*, 863 F.2d 994, 1000 (D.C.Cir.1988), cert. denied, —— U.S. ——, 110 S.Ct. 140, 107 L.Ed.2d 99 (1989), but a reasonable factfinder could not conclude that this is one of those cases.

We have considered all of appellant's arguments, and we affirm the judgment of the district court.