Daniel G. **WOLF**, Plaintiff,

v.

**FERRO CORPORATION**, Defendant.

No. CIV–88–3C.

United States District Court,
W.D. New York.

Sept. 17, 1991.

William A. Price, Buffalo, N.Y., for plaintiff.

Elarbee, Thompson & Trapnell (Robert L. Thompson and Joseph Freeman, of counsel), Atlanta, Ga., for defendant.

## BACKGROUND

CURTIN, District Judge.

Plaintiff Daniel G. Wolf brings this action for employment discrimination against his former employer, Ferro Corporation, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff argues that he was subjected to disparate treatment under the Act when he was discharged, at the age of fifty-seven, during a reduction-in-force ("RIF") at the plant where he worked on January 31, 1986. Defendant chose to retain Michael Maddex, then twenty-five years old, in plaintiff's former position. Mr. Maddex, with six years seniority, had been trained by Mr. Wolf, who had accumulated nearly forty years of seniority. Defendant moves for summary judgment on plaintiff's claim. Plaintiff opposes the motion.

## FACTS

Ferro Corporation ("Ferro") manufactures specialty ceramics at its plant in Buffalo, New York. Ferro bought the plant from Electro–Refractory and Abrasives ("Electro") in 1967. At that time, the plant consisted of four main divisions and several service units. Due to adverse economic conditions, in February, 1984, Ferro began a series of RIFs at the plant. In 1984, one of the main divisions was completely eliminated. The plant continued to lose money, and a series of RIFs followed in 1985 and

1986. The final reduction occurred in January, 1986. Between February 1, 1984, and February 1, 1986, twenty-six salaried employees were discharged for cause or as part of the reductions.

Bruce Tarquino was Plant Engineer during these RIFs. His responsibilities included overseeing the engineering, maintenance, and industrial engineering service units. As of January, 1985, those units had approximately thirty salaried employees. Tarquino was responsible for recommending who should be released as part of the RIFs. Plaintiff was one of the salaried employees under Tarquino's supervision who was recommended for termination.

At the time of his discharge on January 31, 1986, plaintiff was fifty-seven years old. Plaintiff had originally been hired by Electro on September 26, 1946. Plaintiff started as a draftsman, designing production molds in the machine shop. He left briefly for U.S. Army service in 1950–52, but then returned to Electro. In 1958, plaintiff became Machine Shop Foreman. From 1973 to 1978, plaintiff also served as Maintenance Department Foreman. In 1978, plaintiff became Mold Design and Fabrication Supervisor in the engineering department while maintaining his position as Machine Shop Foreman. He supervised two draftsmen and three machinists. He held these positions into early 1985.

In July, 1979, Ferro hired Michael Maddex as a Draftsman I. Mr. Maddex was one of two draftsmen supervised by plaintiff. One of Mr. Wolf's primary responsibilities during this time was to train Mr. Maddex in mold design and machine shop practices. Beginning as early as 1982, Ferro managers began to express their concern that Mr. Maddex might leave the company. Accordingly, promotion and wage increases were discussed and implemented for Mr. Maddex.

In January, 1985, Plant Engineer Tarquino implemented a new maintenance system. This maintenance system required a new position: Maintenance Planner. Tarquino chose plaintiff for the position on the basis of his experience. This was considered a lateral move with no change in plaintiff's salary. Just prior to plaintiff's February 1, 1985, reassignment as Maintenance Planner, Mr. Maddex was promoted to Maintenance Foreman I. This position represented the same responsibilities then being performed by Mr. Wolf as Mold Supervisor, but under a different title.

On May 24, 1985, during a RIF at the plant, plaintiff's Maintenance Planner position was eliminated. Rather than return plaintiff to his former position as Mold Supervisor (or Maintenance Foreman I, the new name for the position), plaintiff was assigned the title of Drafter III, with no loss in pay, *under* the supervision of Mr. Maddex, who remained as Maintenance Foreman I. A twenty-one-year-old draftsman hired in November, 1984, was laid off to make room for Mr. Wolf. One of the reasons for "demoting" Mr. Wolf to a position below his former trainee, Michael Maddex, was: "The expectation, also, that Dan was going to retire as early as he can and we would continue to develop with Maddex." Item 19, Exh. V at 75 (second Tarquino deposition). Despite this "demotion," plaintiff earned a four-percent merit pay increase in September, 1985.

On January 31, 1986, during another RIF at the plant, plaintiff was terminated. Michael Maddex was retained. As of February 6, 1986, however, his title was changed to Drafter III, the position just vacated by plaintiff. This position relieved Mr. Maddex of his supervisory duties. There were no other employees in drafting, and Ralph Benson, Maintenance Foreman, had by that time already assumed supervision of the machine shop.

The pay differential between Messrs. Wolf and Maddex at Wolf's termination was pronounced. Mr. Wolf's salary was $32,160 per year. Mr. Maddex's salary was $21,288 per year. In addition, Mr. Wolf was a participant in the "Electro Refractories Pension Trust," which covered all former employees of Electro at a cost significantly higher than the Ferro pension plan of which Mr. Maddex was a participant. As Mr. Tarquino noted in his deposition, he and Plant Manager William F. Miley considered cost to the company when

assessing who should be terminated during the 1986 RIF. "We talked in terms of dollars," he said. Item 19, Exh. U at 49 (first Tarquino deposition).

Defendant contends that Mr. Wolf was first placed under Mr. Maddex's supervision, and then laid off, while Maddex was retained, because Mr. Maddex was better qualified. Defendant alleges that shortly after plaintiff was transferred to his new position as Maintenance Planner in February, 1985, Mr. Tarquino began noticing deficiencies in plaintiff's performance. The deficiencies cited by defendant include: a shortfall in the volume of maintenance work scheduled, the inability to communicate with the Maintenance Foreman and other members of the maintenance staff, and excessive socializing with employees not involved in maintenance or engineering. After counselling plaintiff on March 15, 1985, Mr. Tarquino noticed improvement in plaintiff's work. Nevertheless, during the January, 1986, RIF, Mr. Tarquino recommended that plaintiff, rather than Mr. Maddex, be let go. In support of this decision, defendant argues that Mr. Maddex (1) cut down on the number of trips taken outside the plant to mold design shops, (2) fostered better morale with employees under his supervision, and (3) turned out a greater quantity of drafting work during the period in 1985 when both Wolf and Maddex were drafting. Plaintiff counters these contentions with evidence to show that defendant's stated reasons for terminating him were pretextual. Plaintiff argues that (1) the alleged deficiencies in his performance as Maintenance Planner can be attributed to the experimental nature of the position, the brief period in which it existed, the fact that plaintiff was required to work with newly hired foremen, and the resistance of hourly workers, (2) trips taken by plaintiff to outside shops were usually taken on plaintiff's own time, (3) performance reviews of himself and Mr. Maddex rated plaintiff higher, and (4) the claims of higher productivity and morale under Mr. Maddex are unsupported by the record.

## DISCUSSION

Under Title VII, 42 U.S.C. § 2000e et seq., as under the ADEA, 29 U.S.C. § 621 et seq., the Supreme Court has parsed two methods of proving the ultimate fact required in each case of employment discrimination: namely, that the defendant intentionally discriminated against the plaintiff. The most common method of proving discrimination is by the three-step procedure set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and affirmed in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Id.* 450 U.S. at 252–53, 101 S.Ct. at 1093–94 (citation omitted) (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). The other method of proof comes into play when plaintiff has direct evidence sufficient to prove that a discriminatory reason more likely than not played a motivating or substantial role in an employment decision. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244, 109 S.Ct. 1775, 1787, 104 L.Ed.2d 268 (1989) (plurality opinion); *Barbano v. Madison County*, 922 F.2d 139, 145 (2d Cir.1990); *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1568 (2d Cir. 1989); *George v. Frank*, 761 F.Supp. 256, 269 (S.D.N.Y.1991); *E.E.O.C. v. National Broadcasting Co.*, 753 F.Supp. 452, 465 (S.D.N.Y.1990), *aff'd without opinion*, 940 F.2d 648 (2d Cir. June 11, 1991); *Danna v. New York Tel. Co.*, 752 F.Supp. 594, 613 n. 6 (S.D.N.Y.1990). Once plaintiff has directly established that an illegitimate reason played a role in the employment decision,

"the burden falls to the defendant to prove by a preponderance of the evidence that it would have made the same decision even if it had not taken the illegitimate factor into account." *Grant*, 880 F.2d at 1568. *See Price Waterhouse*, 490 U.S. at 244–45, 109 S.Ct. at 1787–88.

At some point in the proceedings, of course, the District Court must decide whether a particular case involves mixed motives. If the plaintiff fails to satisfy the factfinder that it is more likely than not that a forbidden characteristic played a part in the employment decision, then she may prevail only if she proves, following *Burdine*, that the employer's stated reason for its decision is pretextual.

*Id.* 490 U.S. at 247 n. 12, 109 S.Ct. at 1789 n. 12. *See also George v. Frank*, 761 F.Supp. at 269.

Plaintiff has introduced two pieces of direct evidence to show that Ferro was motivated by discriminatory purposes in its decision to discharge Mr. Wolf. The first piece of evidence is a statement by Plant Engineer Bruce Tarquino indicating that plaintiff was let go rather than Mr. Maddex because it was expected that plaintiff would retire soon, whereas Michael Maddex was much younger and would continue to develop. The full context of Mr. Tarquino's statement is as follows: In January 1985, Tarquino implemented a new maintenance system and chose plaintiff to head up the new system as Maintenance Planner. This required a lateral move by plaintiff out of his positions as Mold Design and Fabrication Supervisor and Machine Shop Foreman. This move in turn opened a space for Michael Maddex to be promoted within engineering to Maintenance Foreman I, a position which entailed the same responsibilities plaintiff had performed as Mold Design and Fabrication Supervisor. Four months later, when plaintiff's Maintenance Planner position was eliminated in a plant RIF, plaintiff was returned to the engineering department as a draftsman. Plaintiff was not returned to his old supervisory position, however, but instead was placed under the supervision of his former trainee, Michael Maddex. The motivation behind this decision was explained by Bruce Tarquino during his deposition:

Q: Besides outside visits to outside shops and the excessive socializing, what other reasons [did you have] for retaining Maddox [sic] in the Mold Supervisor position rather than putting Wolf back in that position and Maddox [sic] back to draftsman?

A: The expectation, also, that Dan was going to retire as early as he can and we would continue to develop with Maddox [sic].

Item 19, Exh. V at 74–75 (second Tarquino deposition). Although this statement was offered by Mr. Tarquino to explain Mr. Wolf's May 1985 "demotion" rather than his January 1986 discharge, as defendant explained in its brief, "[a]ll the factors that had convinced Tarquino to keep Maddex as Mold Supervisor back in May 1985, when Plaintiff's Maintenance Planner position was eliminated, certainly would have influenced Tarquino's decision to recommend Plaintiff for layoff rather than Maddex." Item 16 at 22–23. The second piece of evidence is also a statement by Mr. Tarquino. When asked in deposition what standards he and Plant Manager William Miley used to decide who should be laid off and who should be retained during the plant RIFs, Mr. Tarquino said: "We talked in terms of dollars...." Item 19, Exh. U at 49 (first Tarquino deposition).

An "expectation of longer service" by a younger, retained employee, has been held an impermissible reason to discharge the older employee. *Marshall v. Arlene Knitwear, Inc.*, 454 F.Supp. 715, 728 (E.D.N.Y.1978), *aff'd in part, rev'd and remanded in part without opinion*, 608 F.2d 1369 (2d Cir.1979). *See also Metz v. Transit Mix, Inc.*, 828 F.2d 1202, 1208 (7th Cir.1987). Similarly, "a number of cases hold that it is age discrimination to replace an older employee with a younger one for the sole purpose of economizing on salary costs." *Visser v. Packer Eng'g Assoc., Inc.*, 924 F.2d 655, 658 (7th Cir.1991) (en banc) (citing *Metz*, 828 F.2d at 1206–11; *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1157–58 (7th Cir.1989); and

*White v. Westinghouse Elec. Co.*, 862 F.2d 56, 62 (3d Cir.1988)). *See Geller v. Markham,* 635 F.2d 1027, 1034 (2d Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981) (rejecting cost-cutting rationale for school board policy that restricted teacher hiring to persons with less than five years' experience); *Hahn v. City of Buffalo,* 596 F.Supp. 939, 953 (W.D.N.Y.1984), *aff'd,* 770 F.2d 12 (2d Cir. 1985) (Curtin, J.) ("An employer's desire to have the most cost-effective work force cannot justify age discrimination where age is not a [bona fide occupational qualification]."); *E.E.O.C. v. City of Altoona,* 723 F.2d 4, 7 (3d Cir.1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2386, 81 L.Ed.2d 344 (1984) (reduction-in-force decisions based on age may not be justified by economic considerations); *Diamantopulos v. Brookside Corp.,* 683 F.Supp. 322, 328–29 (D.Conn. 1988) ("Economic considerations which are simply a result of employing older employees do not constitute legitimate, non-discriminatory reasons for either a failure to hire them or their discharge."). *But cf. Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 117 (2d Cir.1991) ("[T]here is nothing in the ADEA that prohibits an employer from making employment decisions that relate an employee's salary to contemporaneous market conditions and the responsibilities entailed in particular positions and concluding that a particular employee's salary is too high.").

In this case, the statements cited above would appear to raise a genuine issue of fact whether plaintiff was discharged, in part, because of his age. Tarquino's comment that "Dan was going to retire as early as he can and we would continue to develop with Maddex," indicates that the comparative ages of the two men was a direct factor in Ferro's decision to discharge the plaintiff. Alone, it might be sufficient evidence to reach a jury under the *Price Waterhouse* mixed-motives analysis. *See Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d at 1569 (memo that company president was looking for a "young man" sufficient, if believed, to show that age played at least some part in employment decision; "[i]t was for the jury

to decide whether it played a 'motivating or substantial part' in the dismissal...."). Similarly, a jury might conclude that Tarquino's comment that "dollars" were a factor in deciding who should be laid off, when set against the salary and pension cost disparity between Wolf and Maddex, indicated a desire to "replace an older employee with a younger one for the sole purpose of economizing on salary costs." *Visser,* 924 F.2d at 658. *See also Metz,* 828 F.2d at 1207 ("Given the correlation between Metz's higher salary and his years of satisfactory service, allowing Transit Mix to replace Metz based on the higher cost of employing him would defeat the intent of the [ADEA]"). Accordingly, it would appear that plaintiff has adduced sufficient evidence to defeat summary judgment under *Price Waterhouse.*

The court cites this evidence but does not hereby conclude that plaintiff has carried its burden of establishing a *Price Waterhouse* method of proof. Although the court must at some point decide whether this case involves mixed motives, *Price Waterhouse,* 490 U.S. at 247 n. 12, 109 S.Ct. at 1789 n. 12, it declines to make this choice at this stage. As will be seen below, it appears that plaintiff has adduced sufficient evidence to defeat defendant's motion for summary judgment under the *McDonnell Douglas/Burdine* method of proof.

The first step in establishing proof of discrimination under *McDonnell Douglas/Burdine* is the *prima facie* case. "[T]o establish a *prima facie* case, the plaintiff must demonstrate that '(1) she belonged to a protected group (2) she was qualified for her position (3) she was discharged, and (4) her discharge occurred under circumstances giving rise to an inference of [age] discrimination.'" *George v. Frank,* 761 F.Supp. at 268 (quoting *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188–89 (2d Cir.1987)). *See Ludovicy v. Dunkirk Radiator Corp.,* 922 F.2d 109, 110 (2d Cir.1990); *Montana v. First Fed. Sav. & Loan of Rochester,* 869 F.2d 100, 105 (2d Cir.1989); *Russo v. Trifari, Krussman & Fishel, Inc.,* 837 F.2d 40, 43 (2d Cir.1988);

*Pena v. Brattleboro Retreat,* 702 F.2d 322, 324 (2d Cir.1983).

■ There is no question that plaintiff has satisfied the first three of these requirements. He was fifty-seven years old at the time of discharge, was qualified for multiple positions in the plant, and was discharged. It would also appear that plaintiff has satisfied the fourth element. First, plaintiff's responsibilities, or those he was capable of performing, were assumed by a twenty-five-year-old employee who was paid significantly less than plaintiff. *See Oxman v. WLS–TV,* 846 F.2d 448, 455 (7th Cir.1988) (*prima facie* case established where employee could show, in RIF situation, that employer released "protected employee while simultaneously hiring (or not 'bumping') younger employees to fill positions for which the older employee was qualified...."). Second, as discussed above, one of the reasons stated for discharging Mr. Wolf and retaining Mr. Maddex was the expectation that "Dan [Wolf] was going to retire as early as he can and we would continue to develop with Maddex." This fact alone may raise an inference of age discrimination. *See supra.* Third, it appears that the relative cost of retaining plaintiff versus Mr. Maddex was also considered. *See supra.* This evidence is sufficient to raise a genuine issue of fact that age discrimination played a role in Mr. Wolf's discharge. *See Montana,* 869 F.2d at 105; *Blanchard v. Stone Safety Corp.,* 935 F.2d 18, 19–20 (2d Cir.1991).

Defendant rebuts this *prima facie* case with several claims which essentially boil down to one: Maddex was retained rather than Wolf because he was the better qualified employee. Defendant supports this argument by claiming that (1) Maddex took fewer trips to outside machine shops when he supervised mold design than did Wolf, (2) Maddex produced a greater quantity of drafting work when both he and Wolf were drafters, (3) Wolf socialized excessively, and (4) employee morale was better under Maddex's supervision than under Wolf's. These non-discriminatory reasons are sufficient to shift the burden back to plaintiff to show that they are pretextual. *Burdine,* 450 U.S. at 253–55, 101 S.Ct. at 1093–95.

■ To prove pretext, plaintiff is not required to show that age was the only factor in discharging plaintiff. Nor is plaintiff required to show that defendant's "proffered reason was false, but only that its stated reason was not the only reason and that [his] age did make a difference." *Montana,* 869 F.2d at 105. *See Lowe v. Commack Union Free School Dist.,* 886 F.2d 1364, 1375 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990); *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 82 (2d Cir.1983). Moreover, at the summary judgment stage, plaintiff need not prove pretext, but need only show that material issues of fact exist as to whether defendant's reasons for discharging plaintiff were pretextual. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1115 (2d Cir.1988); *Halbrook v. Reichhold Chem., Inc.,* 735 F.Supp. 121, 124–25 (S.D.N.Y.1990); *Diamantopulos,* 683 F.Supp. at 328. *Cf. Sorba v. Pennsylvania Drilling Co.,* 821 F.2d 200, 205 (3d Cir.1987), *cert. denied,* 484 U.S. 1019, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988). This can be shown by establishing that defendant's proffered reasons are "unworthy of credence." *Gibson v. American Broadcasting Co.,* 892 F.2d 1128, 1132 (2d Cir.1989); *Dister,* 859 F.2d at 1113.

For the reasons stated below, plaintiff has met this burden. With respect to the relative qualifications of the two men, five performance evaluations prepared by various Ferro managers have been submitted to the court.[1] Only two of these evalua-

---

**1.** The evaluations include a February 1, 1983, evaluation of plaintiff as Mold Supervisor prepared by Daniel T. Parshall, Bruce Tarquino's predecessor as Plant Engineer. Item 19, Exh. C. This evaluation rates plaintiff either "outstanding" or "superior" in nearly every category. *Id.* Plaintiff was again evaluated as Mold Supervisor on September 1, 1984, but by Bruce Tarqui-

no. Item 21, Exh. B. The third evaluation is of plaintiff as Drafter/Designer II, prepared on July 31, 1985, just two months after plaintiff was placed in this position after the elimination of his Maintenance Planner position. This evaluation was prepared by Michael Maddex. *Id.* Michael Maddex's evaluations were prepared on October 23, 1984, when he was under the super-

tions appear directly comparable, however: the September 1, 1984, evaluation of Wolf as Mold Supervisor and the January 1, 1986, evaluation of Maddex in that same position. Both of these evaluations were prepared by Mr. Tarquino, whose opinion defendant relies on to support its claim that *defendant believed* Maddex to be better qualified. A comparison of these evaluations by any standard reveals that plaintiff, not Mr. Maddex, performed better in a supervisory role.[2] This conclusion is not substantially undercut by reference to the other evaluations and is, in any event, a question for the jury. *See Dister,* 859 F.2d at 1114 (where an employer's intent or state of mind is in issue, summary judgment is often inappropriate).

Defendant's claim that it discharged plaintiff because he made more trips to outside machine shops than did Maddex is also questionable. In deposition, Mr. Tarquino admitted he did not know how many trips were made by plaintiff on his own time. Item 19, Exh. V at 70–71. Moreover, plaintiff has filed affidavits of the outside machine shop owners who state that, while Wolf made trips before or after working hours, Maddex only visited during working hours. *See, e.g.,* Items 30, 31 (affidavits of Carl F. Maute and Richard K. Dern). Again, this evidence would appear to raise an issue of fact for trial.

Similarly, Tarquino's claim that Maddex did more work as a draftsman is called into question by his own deposition. On cross-examination, after being pressed about the basis of his belief that Maddex produced more work, the following exchange took place:

Q. Okay, okay. So, you don't know how much work either one produced

for whatever time you observed them spending at the [drafting] board in 1985, do you?

A. No.

Item 19, Exh. V at 104. Moreover, comparing Tarquino's September 1, 1984, evaluation of plaintiff with his January 1, 1986 evaluation of Maddex, reveals that Tarquino rated *plaintiff* higher under "Quantity of Work." *See* Item 21, Exh. A.

Defendant's claim that morale was better is also thin. It appears to be based on the statements of only two employees, only one of whom was under the supervision of either Wolf or Maddex, the substance of whose comments Mr. Tarquino has no recollection. *See* Item 19, Exh. V at 115–20. Finally, as for the claims of excessive socializing, there is only one comment on Wolf's performance reviews at all related to this allegation. In Wolf's September 1, 1984, evaluation prepared by Mr. Tarquino, Tarquino writes: "Develop a conscious effort at self-discipline in conversation by 'sticking to the subject.'" Item 21, Exh. A. Contrasted against this is Tarquino's "Satisfactory" rating for plaintiff in the areas of "Human Relations" and "Employee Relations." These ratings are equal to Maddex's in his January 1, 1986, evaluation. *See id.*

This evidence is sufficient, when coupled with the direct evidence that defendant considered the comparative ages of Wolf and Maddex when deciding to discharge the former, *see supra,* to raise a genuine issue of fact as to whether defendant's stated reasons for discharging plaintiff were pretextual. *See Montana,* 869 F.2d at 105–06; *Blanchard,* 935 F.2d at 19–20. Accordingly, defendant's motion for summary judgment is denied.

---

vision of plaintiff, and January 1, 1986, after he had assumed a supervisory role as Maintenance Foreman I. Both evaluations were prepared by Mr. Tarquino. *Id.*

**2.** Plaintiff is rated higher than Maddex under the standard rating factors in "Job Knowledge," "Responsibility," "Quantity of Work," "Judgment," "Industriousness," and "Cost Consciousness." He is rated equal to Maddex in "Quality of Work," "Human Relations," "Creativity," "Communications," "Pressure Situations,"

"Leadership," and "Overall Performance." He is rated marginally below Maddex in only one category: "Organization." Under six additional factors for supervisors, plaintiff again rates higher in two: "Knowledge of Subordinates" and "Cost Control." Plaintiff rates marginally lower again in "Organization." Wolf and Maddex are rated equally in the other three categories. There is no significant disparity between the two men in Mr. Tarquino's narrative.

Discovery is now complete. This file is referred to United States Magistrate Judge Leslie G. Foschio for the purpose of conducting settlement negotiations. Counsel shall contact the Magistrate's office for an appointment. If the parties cannot reach a settlement, either a meeting or telephone conference shall be held with the court on January 7, 1992, at 8:45 a.m. to set a trial date.

So ordered.