Eleanor H. MONTANA,
Plaintiff–Appellant,

v.

FIRST FEDERAL SAVINGS AND
LOAN ASSOCIATION OF
ROCHESTER, Defendant–Appellee.

No. 91, Docket 88–7068.

United States Court of Appeals,
Second Circuit.

Argued Aug. 29, 1988.
Decided Feb. 21, 1989.

---

Charles D. Maurer, New York City, for plaintiff-appellant.

Michael Moravec, Buffalo, N.Y. (Phillips, Lytle, Hitchcock, Blaine & Huber, of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, CARDAMONE and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

The district court granted summary judgment dismissing claims of Eleanor H. Montana that in discharging her First Federal Savings & Loan Association of Rochester (First Federal) discriminated against her on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (ADEA) and on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Title VII). We affirm the dismissal of the sex discrimination claim, because plaintiff failed to establish even a prima facie case of sex discrimination. On the age discrimination claim we

reverse and remand, because plaintiff's submissions both established a prima facie case and set forth specific facts raising a genuine issue as to whether the employer's proffered reason for termination was pretextual.

## I. FACTS

Montana began her employment with Knickerbocker Federal Savings and Loan Association (Knickerbocker) in 1951 at the age of twenty-four. In 1981 and 1982, Knickerbocker and three other savings and loan associations merged to create First Federal Savings and Loan Association of Rochester (First Federal).

First Federal is now divided into four regions: the "metro" region, including all branches and departments in the New York City area; the "central" region, including all branches and departments in Binghamton, Syracuse, and outlying areas in central New York; the "upstate" region, including all branches and departments in "upstate" New York; and corporate headquarters, including all branches and departments in the Rochester area.

Because of the mergers, the number of employees in the metro region, where Montana was employed, was reduced from approximately 600 in September 1982 to approximately 480 in November 1983. Included in the reduction in force was the elimination of forty-five managerial positions.

After the March 1982 Knickerbocker merger, Montana, who had been vice president of personnel at Knickerbocker, became the personnel administrator of First Federal's metro region. First Federal maintained Montana's salary at $36,200, and credited her with approximately thirty years of service.

In early November 1983 Susan Chapin, corporate personnel manager, and Dean Schultz, acting senior vice president of administration and general counsel, restructured First Federal's personnel reporting system so that the metro and central regions would no longer be accountable for their own personnel functions, but would instead report directly to, and be administered through, the Rochester Corporate headquarters. Following that decision Montana was discharged on November 10, 1983.

Until the time of her discharge, Montana had consistently received satisfactory to excellent performance ratings. She was described by her immediate supervisor, First Federal's administrative services manager, as a "very capable personnel manager" and an "excellent" personnel administrator. At fifty-six years of age and with thirty-two years of experience behind her at First Federal and Knickerbocker, including nineteen years in the personnel department, Montana was at her termination the oldest, highest paid, and most senior nonclerical employee in First Federal's personnel department.

After her discharge, First Federal assigned the bulk of Montana's responsibilities to Mary Sue Rossi, a twenty-six year old woman who had been hired by First Federal on December 6, 1982. Rossi held the rank only of personnel administrator, she was paid less than Montana, and she was less experienced in the field. Even though Rossi's previous workload had required her to work overtime on a regular basis, the addition of some of Montana's duties increased her already heavy workload by approximately 15–20 percent. Some of Montana's duties were also assigned to Patricia Chugg, the corporate employee relations/benefits manager.

When First Federal terminated Montana in late 1983, it also decided to centralize in Rochester the personnel functions of its wholly owned subsidiary, HWD Funding Corporation (HWD). First Federal brought Barbara Schrot and her assistant from HWD to First Federal's personnel department in January 1984, only a few months after Montana's termination. Barbara Schrot, age twenty-six, had been HWD's personnel officer, leasing specialist, and corporate secretary and had spent up to fifty percent of her time at HWD on personnel work. On January 2, 1984, she assumed the position of compensation analyst in First Federal's personnel department where she was responsible for salary ad-

ministration, performance appraisal, and compensation for all of First Federal. Some of these duties had been performed by Rossi who had become overworked by assuming Montana's responsibilities. Schrot's assistant assumed the position of assistant compensation analyst. Montana was not considered for the position of compensation analyst although she was qualified for it.

The district court granted First Federal's motion for summary judgment on the age discrimination claim, holding that Montana had established a prima facie case but had not produced evidence creating a material factual issue as to whether First Federal's stated reason for terminating her was pretextual. The district court also granted First Federal's motion for summary judgment on the sex discrimination claim, holding that Montana had failed to establish a prima facie case. Montana's motion for reargument was denied, and this appeal followed.

## II. DISCUSSION

### A. *Age Discrimination Claim*

The Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1) (ADEA) provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[ ]". 29 U.S.C. § 623(a)(1). This protection extends to employees who are at least 40 years old. 29 U.S.C. § 631(a).

The well known three-step analysis for Title VII cases established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) applies also to cases brought under the ADEA. *Pena v. Brattleboro Retreat*, 702 F.2d 322, 323–24 (2d Cir.1983); *Geller v. Markham*, 635 F.2d 1027, 1032, 1034–35 (2d Cir.1980), *cert. denied*, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981).

Montana contends that the district court erred by holding that Montana failed to set forth specific facts to show that First Federal's proffered reason for firing her was a pretext for age discrimination. First Federal agrees with the district court as to pretext, but also contends that Montana even failed to establish a prima facie case of age discrimination. As we view the record on this claim, Montana both established a prima facie case and presented sufficient evidence to create a triable issue over pretext. Accordingly, we reverse and remand on the age discrimination claim.

A court may grant summary judgment under Fed.R.Civ.P. 56(c) only when "there is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Where, as here, the nonmovant bears the ultimate burden to prove at trial that the defendant discriminated, *see Texas Department of Community Affairs v. Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093, she may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In addition, in ruling on a motion for summary judgment, a court must "resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). *Accord Meiri v. Dacon*, 759 F.2d 989, 997–98 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Finally, summary judgment is ordinarily inappropriate where intent and state of mind are at issue. *Meiri v. Dacon*, 759 F.2d at 998; *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir.1984).

### 1. *Prima Facie Case*

■ First Federal's central argument is that, in a reduction-in-force or structural reorganization case, the plaintiff must show as part of her prima facie case that

she was replaced by a newly hired employee. We reject this incorrect standard for reduction-in-force and structural reorganization cases and agree with the district court that Montana established a prima facie case of age discrimination.

In *McDonnell Douglas*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), the Supreme Court articulated the following test to determine if a plaintiff had made a prima facie showing of racial discrimination under Title VII: (1) that he belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. This method of establishing a prima facie case has been applied in many ADEA cases. First Federal contends that when the discharge results from a reduction in force, the fourth element includes a requirement that a plaintiff whose position was eliminated upon termination show she was replaced by someone who was newly hired.

*McDonnell Douglas* imposes no such requirement. Moreover, from the outset, the Supreme Court expressly noted that the *McDonnell Douglas* standard, though a useful yardstick, "is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. *See also Texas Department of Community Affairs v. Burdine*, 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6 (*McDonnell Douglas* standard "is not inflexible"). More recently, in *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), the Court stressed that the *McDonnell Douglas* analysis is neither "rigid" nor "mechanized" and that the primary focus is always whether an employer treats an employee less favorably than other employees for an impermissible reason.

We too have recognized that the *McDonnell Douglas* standard is not a rigid one and that the "central question is whether

[the] plaintiff has presented sufficient evidence to permit a reasonable fact-finder to conclude that age was a determinative factor in the employer's decision." *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 81 (2d Cir.1983). In *Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914, 920–21 (2d.Cir.1981), we held that even though the plaintiff, whose job was eliminated upon his discharge, failed to show that a new employee took over his job after discharge or even that the position was left open, the *McDonnell Douglas* formula is not the only means of raising an inference of age discrimination. As alternatives, the plaintiff was permitted to show direct evidence, statistical evidence, or circumstantial evidence supporting an inference of age discrimination. *Id.* at 921.

In *Hagelthorn v. Kennecott Corp.*, 710 F.2d at 76, we again considered the requirements of a prima facie case of age discrimination in the context of a structural reorganization or work force reduction. Relying on *Stanojev*, 643 F.2d at 914, and on Supreme Court assertions that the *McDonnell Douglas* formula is not inflexible, we held that plaintiff Hagelthorn could depart from the *McDonnell Douglas* standard and show direct evidence of discrimination; he was not required to show that he was replaced by any employee or that his job continued to exist after the reorganization. *Hagelthorn*, 710 F.2d at 81.

Finally, we have previously tailored the four elements of a *McDonnell Douglas* prima facie case to permit a plaintiff in a non-reduction-in-force case to make a prima facie showing of age discrimination without establishing that she was replaced by a younger employee. *Pena v. Brattleboro Retreat*, 702 F.2d 322, 324 (2d Cir. 1983) (plaintiff can establish a prima facie case by showing that (1) she was in the protected age group; (2) she was qualified for the job; (3) she was discharged; and (4) *the discharge occurred under circumstances giving rise to an inference of age discrimination*).

Other circuits have likewise rejected First Federal's contention that a plaintiff in a reduction-in-force or structural reorgani-

zation case must show that he was replaced by a newly hired person. *See Oxman v. WLS–TV*, 846 F.2d 448, 453–56 (7th Cir. 1988); *Coburn v. Pan American World Airways, Inc.*, 711 F.2d 339, 342–43 (D.C. Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1438 (11th Cir. 1983).

In short, we decline to apply the *McDonnell Douglas* standard inflexibly, and we now hold expressly what our previous decisions have clearly implied: that in a reduction-in-force case or a structural reorganization case, a discharged employee who seeks under *McDonnell Douglas* to establish a prima facie case, need not show that he was replaced by a younger, newly hired employee; it is sufficient that the discharge occur in circumstances giving rise to an inference of age discrimination.

When the correct standard is applied to these circumstances, it is clear that Montana did establish a prima facie case. There is no dispute over the first three elements: at 56 years of age she was within the protected age group; she was qualified for her job; and she was discharged. As to whether the circumstances of her discharge raise a permissible inference of age discrimination, (1) the majority of her responsibilities were not eliminated, but were transferred to a twenty-six year old overworked coworker, Rossi; (2) shortly thereafter some of Rossi's responsibilities were transferred to another twenty-six year old woman hired as a compensation analyst; and (3) Montana was not offered the position of either of these younger women. From this evidence a reasonable fact-finder could infer that Montana was disadvantaged in favor of the younger employees, and thereby made a victim of age discrimination.

### 2. *Pretext*

First Federal's articulated "legitimate, nondiscriminatory reason", *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093, for discharging Montana was that it eliminated her position in restructuring and centralizing its personnel department at its corporate headquarters in Rochester. Montana sought to show that this avowed reason for her termination was pretextual, but the district court held that she failed to raise a triable issue of pretext. We disagree. We note initially that Montana was not required to show that age was the only factor in First Federal's decision. *Hagelthorn v. Kennecott Corp.*, 710 F.2d at 82; *Geller v. Markham*, 635 F.2d at 1035. Nor was she required to show that First Federal's proffered reason was false, but only that its stated reason was not the only reason and that her age did make a difference. *Hagelthorn*, 710 F.2d at 82.

When viewed in the light most favorable to her, Montana's evidence was sufficient to defeat summary judgment. First, at the time of her discharge, Montana was the oldest and highest paid nonclerical employee in First Federal's personnel department. Second, she was the only department head whose position was consolidated into the corporate headquarters at Rochester and whose staff continued without her. Third, she was not offered the opportunity to transfer to Rochester. Fourth, after her termination, her duties were not eliminated; instead, the bulk of her duties were reassigned to a coworker, Rossi, who was thirty years younger. Even before assuming these added responsibilities, Rossi had worked overtime on a regular basis. By taking on Montana's responsibilities, Ms. Rossi's workload increased by 15–20 percent. Moreover, because these additional duties overburdened Rossi, many of her duties were subsequently distributed to another younger, newly hired personnel employee. Fifth, when First Federal took over the personnel functions of its wholly owned subsidiary, HWD, and created the position of compensation analyst, it failed even to consider Montana for that position although she was qualified for it. Finally, after Montana's discharge, purportedly as part of a reduction in force, First Federal increased the number of employees in its personnel department by three, adding the positions of compensation analyst, assistant compensation analyst, and pension administrator. Still, Montana

was neither offered a position nor even considered for those positions.

When viewed together, these circumstances create a genuine factual issue as to whether First Federal's stated reason for terminating Montana—the centralization of its personnel department in Rochester and accompanying reduction in force—was pretextual and, thus, as to whether age was a factor in First Federal's decision to terminate Montana. Summary judgment was, therefore, inappropriate.

■ We further note that the district court seems to have attached undue significance to First Federal's claim that it merely exercised a good faith business judgment in terminating Montana. Certainly the court could not merely substitute its judgment for that of a business judgment, nor could it determine that First Federal should more properly have released another instead of Montana. *See Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1223 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981) (the ADEA "was not intended as a vehicle for judicial review of business decisions"); *Parcinski v. Outlet Co.,* 673 F.2d 34, 37 (2d Cir.1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 950 (1983). But where, as here, the plaintiff claims not that her employer used poor business judgment in discharging her but that her employer used the structural reorganization as a cover for discriminatory action, a federal court, to ensure that the business decision was not discriminatory, is not forbidden to look behind the employer's claim that it merely exercised a business decision in good faith. As the seventh circuit noted in *Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13, 21 n. 8 (7th Cir.1987):

> [A]lthough the ADEA does not hand federal courts a roving commission to review business judgments, the ADEA *does* create a cause of action against business decisions that merge with age discrimination. Congress enacted the ADEA precisely because many employers or younger business executives act as if they believe there are good business

reasons for discriminating against older employees. (emphasis in original).

*See also Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.) (courts must refrain from second-guessing decisionmaking process, but must allow employees to show that employer acted in an illegitimate or arbitrary manner), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). To hold otherwise would effectively insulate an employer from the constraints of federal antidiscrimination law during any structural reorganization or reduction in force.

**B.  *Sex Discrimination Claim***

■ Montana also alleges that First Federal unlawfully discriminated against her on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Title VII). Title VII claims, like the ADEA claim, are governed by the *McDonnell Douglas* analysis.

The district court held that Montana failed to make even a prima facie showing of sex discrimination and, thus, granted First Federal's motion for summary judgment on the sex discrimination claim. Mindful that the plaintiff's burden of establishing a prima facie case is not an onerous one, *see Sweeney v. Research Foundation of the State University of New York,* 711 F.2d 1179, 1181 (2d Cir.1983), we nevertheless affirm the district court's grant of summary judgment on this issue.

To establish a prima facie case of sex discrimination under Title VII, plaintiff was required to show that she was treated less favorably than comparable male employees in circumstances from which a gender-based motive could be inferred. *Schwabenbauer v. Board of Education,* 667 F.2d 305, 309 (2d Cir.1981); *Zahorik v. Cornell University,* 729 F.2d 85, 93–94 (2d Cir.1984). It is not disputed that Montana is female, that she was qualified for her job, and that she was terminated. However, she has failed to raise a possible inference of gender-based discrimination.

Montana bases her claim of gender discrimination on the fact that six male employees in the metro region were not terminated even though their positions were also

eliminated. First, Ernest Thowdis, First Federal's administrative services manager, was relieved of two of his three primary responsibilities but with no diminution in salary. When his position was subsequently eliminated entirely, Thowdis was initially terminated but later offered the position of a former subordinate who had resigned. Although this was a job of lesser responsibility, First Federal did not reduce Thowdis' salary. In addition, five other male managerial employees—Vincent O'Connor, Salvatore Fornatale, George Bambrick, John Darling, and Robert Fornatale—were similarly not terminated. When First Federal eliminated their positions of area manager, each was placed in a position of lesser responsibility and, except for Vincent O'Connor, received no decrease in salary.

First Federal, on the other hand, has established that from September 1982 to November 1983, it decreased its work force in the metro region from approximately 600 employees to 480 employees, discharging from the metro region forty-five managers, both male and female. Additionally, it has produced evidence showing that, of eight managers in all regions whose entire departments were eliminated and functions consolidated into Rochester from March 1, 1982 to June 30, 1985, and who also received job offers or relocation assignments from First Federal, four were women. Montana does not refute this.

Montana's sex discrimination argument essentially boils down to a complaint that First Federal retained six male employees whose previous positions had been eliminated, but did not offer Montana a position upon elimination of her position. Montana, however, presents no evidence, statistical or circumstantial, to justify an inference that First Federal made gender a factor in its termination decision. She presents no evidence, first, of the total number of male and female managers in the metro region; second, of the overall percentage of males discharged or offered other positions as compared to the overall percentage of women discharged or offered other positions in the metro region; third, to refute First Federal's evidence of non-discrimination based on its treatment of all managers whose entire departments were eliminated; or finally, that First Federal held discriminatory attitudes towards women in general or her in particular. To the contrary, the record shows that after her termination, women assumed Montana's duties and were hired or promoted to fill other newly created positions in Montana's department.

Without more, the mere fact that First Federal, during a structural reorganization in which it eliminated many positions, retained six male managers but did not offer Montana a position, does not permit an inference that First Federal discriminated against Montana on the basis of gender.

## III. CONCLUSION

The judgment appealed from is affirmed insofar as it dismissed Montana's Title VII claim of gender discrimination; the judgment is reversed on the age discrimination claim and the case is remanded to the district court for further proceedings.