**Kenneth J. STEIN, Plaintiff,**

v.

**McGRAW–HILL, INC., Defendant.**

**No. 90 Civ. 1957 (JSM).**

United States District Court,
S.D. New York.

Jan. 8, 1992.

Eugene Prosnitz, New York City, for plaintiff.

Epstein Becker & Green, P.C. by Joseph D. Luksch, Philip I. Weis and Kenneth W. DiGia, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

MARTIN, District Judge:

Defendant moves for summary judgment dismissing this age discrimination action brought under the Age Discrimination Act of 1987, as amended, 29 U.S.C. §§ 621 *et seq.* ("ADEA") and the New York Human Rights Law, N.Y.Exec.Law § 296 *et seq.* Defendant also seeks summary judgment dismissing plaintiff's contract claim for severance pay and his claim for severance

pay, liquidated damages and attorneys' fees pursuant to Section 198 of the New York Labor Law.

## FACTS

Plaintiff began working for Aviation Week Magazine (subsequently renamed Aviation Week & Space Technology), a weekly publication of McGraw–Hill, Inc. in its New York City office. After a brief stint as Copy Desk Editor in 1963, plaintiff held the position of Avionics Editor until his termination from employment on May 31, 1988 at age sixty-four. His primary duties as an Avionics Editor consisted of generating topics and writing articles about air traffic control, navigation, radar systems, flight control systems, related military and civilian technology, and other issues in the field of avionics (the airborne application of electronics). Additionally, he was required to prepare and edit items for the magazine's Filter Center Column, a regularly appearing column consisting of a number of short newsworthy items each week, and to prepare periodic special reports and technical surveys. He also performed editorial duties in addition to his reporting and writing tasks.

Plaintiff began receiving negative evaluations in 1986. His 1985 Performance Appraisal (dated 4/2/86) stated that his overall performance "minimally met expectations." It included constructive criticism designed to help him increase his productivity. Additional negative performance reviews and warnings followed. These evaluations focused on the plaintiff's tardiness and low output. On January 30, 1987 the Editor-in-Chief, Mr. Fink, issued the plaintiff a written warning stating that the plaintiff's productivity has declined, and that he had received reports concerning plaintiff's tardiness and failure to meet deadlines. The warning expressly advised the plaintiff that Mr. Fink would take action if his expectations were not met within 30 days. On April 6, 1987 plaintiff sent Mr. Fink a memorandum, stating that he disagreed with Mr. Fink's prior comments, and requesting additional constructive criticism and time to correct any problems.

Mr. North, plaintiff's direct supervisor, issued a "final warning" on January 29, 1988, which required the plaintiff to submit two publishable feature articles each month and contribute at least two publishable filter center items each week. On March 14, 1988 plaintiff responded to the final warning in a memorandum stating that his story output was greater than had been reported and that he had experienced various difficulties in researching and preparing stories.

Mr. Fink terminated plaintiff's employment "for cause" on May 31, 1988. Plaintiff was not replaced by any employee after his termination. The company distributed plaintiff's workload among the other Avionics Editors.

Plaintiff, while acknowledging the receipt of the warnings and evaluations discussed above, asserts that his productivity, as measured by the total number of by-line stories, was the same for the period of 1984 to 1987 as from 1978 until 1981. Additionally, he contends that his output, if measured by the number of columns published, was close to average when compared to similarly situated writers located outside of Washington, D.C. He also claims that the defendant had no defined productivity standards.

## I. *Age Discrimination*

■ The ADEA prohibits an employer from discharging or otherwise discriminating against an individual because of his or her age. 29 U.S.C. § 623(a)(1).[1] In a disparate treatment case, such as the one here, the employee has the ultimate burden of proving to the trier of fact that age made a difference in the decision to terminate his employment. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d

---

**1.** Because the "same elements and burdens of proof apply" to a discrimination claim under the ADEA and New York's Human Rights Law, and the two claims are analogous, *Vaughn v.* *Mobil Oil Corp.*, 708 F.Supp. 595, 599 (S.D.N.Y. 1989), the Court initially will just consider the ADEA claim. The analysis will apply equally well to the state law claim.

207 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff."). Plaintiff has the burden of proving that "age was the 'determining factor' in his discharge in the sense that, 'but for' his employer's motive to discriminate against him because of age, he would not have been discharged." *Pena v. Brattleboro Retreat*, 702 F.2d 322, 323 (2d Cir.1983) (citations omitted). Under this "but for" standard, plaintiff need not show that age was the "principal reason" for his discharge. Instead, plaintiff must prove that age was a "significant contributing factor." *Lowe v. Commack Union Free School Dist.*, 886 F.2d 1364, 1375 (2d Cir.1989), *cert. denied*, 494 U.S. 1026, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990); *cf. Paolillo v. Dresser Indus., Inc.*, 865 F.2d 37, 40 (2d Cir.1989) (plaintiff is "required to show only that the reasons offered by [the employer] were not its only reasons and that the age of [the plaintiff] 'made a difference' in its decision"), *modified*, 884 F.2d 707 (2d Cir.1989); *Benjamin v. United Merchants and Mfrs., Inc.*, 873 F.2d 41, 43 (2d Cir.1989) ("[A]ge need not be the sole reason for discharge in order to find an ADEA violation.").

■ The Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) established a three-step inquiry for the order and allocation of proof under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The courts apply the same analysis to cases arising under the ADEA. *See, e.g., Hollander v. American Cyanam-*

*id Co.*, 895 F.2d 80, 83 (2d Cir.1990); *Pena v. Brattleboro Retreat*, 702 F.2d 322, 323 (2d Cir.1983). First the plaintiff must establish a prima facie case of discrimination. Next, if this is established the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason for its action." The employee in order to meet his burden of proof must then demonstrate that the employer's stated reason was actually "a pretext for discrimination." *Hollander*, 895 F.2d at 83. Although the burden of production shifts, the burden of persuasion remains with the employee throughout. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

■ In the absence of a "smoking gun," an employee may establish a prima facie case of discrimination by meeting a four pronged test. Under this test, an employee must prove that: (1) he was a member of a protected class; (2) he was qualified for the position from which he was discharged; (3) he was discharged; and (4) he was terminated or discharged under circumstances which give rise to an inference of age discrimination.[2] *Hollander*, 895 F.2d at 83. Both parties agree that Stein was over the age of 40 and that he was discharged. The controversy concerns whether he was qualified for the job, and whether he was terminated or discharged under circumstances which give rise to an inference of age discrimination.

■ The well-established summary judgment principles also apply to an age discrimination claim. *See Montana v. First Federal Sav. & Loan Ass'n*, 869 F.2d 100, 103 (2d Cir.1989). "Where, as here, the nonmovant bears the ultimate burden of proving at trial that the defendant discriminated, [plaintiff] may defeat the summary judgment motion by producing sufficient

---

2. In *Owens v. New York City Housing Auth.*, 934 F.2d 405, 409 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991), the court listed as the fourth factor "that a younger individual has replaced her," rather than discharge under circumstances giving rise to an inference of discrimination. However, not only is this statement in *Owens* dicta, but it most likely is a mistake. The *Owens* court cites *Montana v. First Federal Sav. and Loan Ass'n*, 869 F.2d 100 (2d Cir.1989), in support of the four

prong test. The *Montana* court explicitly states that there is no need to show that the employee discharged was replaced by a younger employee. *Montana*, 869 F.2d at 104–05. Since Stein was not replaced by another employee, and the Court finds that Stein was not discharged under circumstances giving rise to an inference of discrimination, the decision to use the "inference of discrimination" fourth factor does not affect the outcome of this case.

specific facts to establish that there is a genuine issue of material fact." *Id.* However, in the context of intentional discrimination claims courts have generally cautioned against summary judgment since intent and state of mind are at issue. *See Id.; Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988). As Judge Walker recently stated in an age discrimination action, "[r]esolution of credibility conflicts between … conflicting versions are matters for the jury and [are] not properly decided … on summary judgment." *George v. Mobil Oil Corp.,* 739 F.Supp. 1577, 1580 (S.D.N.Y.1990) (alterations in original) (quoting *Robinson v. Via,* 821 F.2d 913, 924 (2d Cir.1987)). On the other hand, a plaintiff is not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind. *Dister,* 859 F.2d at 1114; *Cronin v. ITT Corp.,* 737 F.Supp. 224, 229 (S.D.N.Y. 1990), *aff'd,* 916 F.2d 709 (2d Cir.1990).

### A. Qualification for the Job

■ *Owens v. New York City Housing Auth.,* 934 F.2d 405, 409 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991), provides that one need "only a minimal showing of qualification to establish a prima facie claim." The court also adds that an employee "only needs to demonstrate that [he] 'possesses the basic skills necessary for performance of the job.'" *Owens,* 934 F.2d at 409, (quoting *Powell v. Syracuse University,* 580 F.2d 1150, 1155 (2d Cir.1978), *cert. denied,* 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978)). Yet, although the employee need not demonstrate even average performance, *Powell,* 580 F.2d at 1155, "[i]n a discharge case the requirement that the plaintiff be qualified for the job in question requires some allegations demonstrating satisfactory performance at the time of the discharge." *Dugan v. Martin Marietta Aerospace,* 760 F.2d 397, 400 (2d Cir.1985) (citing *Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230, 244 (4th Cir.1982)). *Accord Franklin v. Greenwood Mills Marketing*

*Co.,* 33 Fair Empl.Prac.Cas. (BNA) 1847, 1854 (S.D.N.Y.1983) (When "relying upon circumstantial evidence of discrimination, [an employee] is required to show that he was 'qualified' in the sense that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative."). The rationale behind this criteria is that the employee must demonstrate that his performance warranted continued employment, "thereby raising an inference that some other factor was involved in the decision to discharge him…." *Powell v. Syracuse University,* 580 F.2d 1150, 1155 (2d Cir.1978) (quoting *Flowers v. Crouch–Walker Corp.,* 552 F.2d 1277, 1283 (7th Cir.1977)), *cert. denied,* 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978).

Some courts have defined satisfactory performance as performance meeting one's "employer's legitimate expectations." *See Dale v. Chicago Tribune Co.,* 797 F.2d 458, 463 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987); *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir. 1985), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *Huhn v. Koehring Co.,* 718 F.2d 239 (7th Cir.1983); *Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230, 244 (4th Cir.1982); *Halsell v. Kimberly–Clark Corp.,* 683 F.2d 285 (8th Cir. 1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). The two years of warnings and poor evaluations given Stein by his supervisors suggest that his performance did not meet their expectations, and they did not view him as worthy of continued employment. Starting with plaintiff's 1985 performance report which stated that he "minimally met expectations," his supervisors in his 1986 and 1987 performance reviews and additional letters clearly expressed dissatisfaction with plaintiff's productivity level. The plaintiff has not produced any evidence of positive reports indicating satisfaction on the part of some top management with respect to his performance,[3] which could counterbalance the dissatisfaction of the other supervisors.

---

**3.** Plaintiff does attach letters of thanks for his twenty years of service with the firm, but these do not specifically discuss job performance.

■ If we assess job qualification by using the test of the *employer's* legitimate expectations, then the employer's assessments determine whether or not standards were met. *See Dale,* 797 F.2d at 463 (criticisms by superior found to indicate that the employee was not meeting the employer's expectations); *Meiri,* 759 F.2d at 995 (stating that in a Title VII context "[i]n determining whether an employee's job performance is satisfactory, courts may—as they often must—rely on the evaluations rendered by supervisors"); *Kelly v. Metro–North Commuter Railroad,* 51 Fair Empl. Prac.Cas. (BNA) 1136, 1142, 1989 WL 156298 (S.D.N.Y.1989) ("the district court often needs to consider evaluations rendered by supervisors.") As asserted by the plaintiff, however, these expectations must be legitimate. *See Meiri,* 759 F.2d at 995; *Dale,* 797 F.2d at 463. Thus, the employer cannot establish an employee as unqualified by setting unrealistic standards. *Dale,* 797 F.2d at 463 n. 3. Furthermore, the employer may not rely on entirely subjective standards in evaluating the employee's performance. *Knight v. Nassau City Civil Service Comm'n,* 649 F.2d 157, 161 (2d Cir.1981), *cert. denied,* 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 87 (1981).

Stein's supervisors based their criticisms and eventual discharge of Stein on his low productivity as measured by the number of by-line stories he wrote. Stein acknowledges that even compared with writers outside of Washington[4] he wrote fewer by-line stories than average. Although McGraw–Hill had no fixed standard for productivity, the magazine need not establish an exact by-line output cutoff. The management's general criterion that an employee must turn out a quantity of by-line stories comparable with the national[5] average for the magazine's editors is both a legitimate expectation and an objective manner of evaluation. Stein failed to meet this standard. The Court, therefore, finds that as a matter of law plaintiff has failed to make the minimal showing of qualification necessary to defeat defendant's motion for summary judgment.

**B. Inference of Discrimination**

■ A plaintiff can meet the requirement of showing dismissal under circumstances giving rise to an inference of discrimination by direct evidence, statistical evidence, circumstantial evidence, or by showing that a younger employee replaced him. *Montana v. First Federal Sav. and Loan Ass'n,* 869 F.2d 100, 105 (2d Cir. 1989). One example of circumstantial evidence is proof of satisfactory performance. *Littman v. Firestone Tire & Rubber Co.,* 709 F.Supp. 461, 465 (S.D.N.Y.1989), *summary judgment granted on add'l claim,* 715 F.Supp. 90 (S.D.N.Y.1989). As the Second Circuit ruled in *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989), a § 1981 and Title VII case, a showing "that a proffered justification [for termination] is pretextual is itself sufficient to support an inference that the employer intentionally discriminated."

■ Stein has offered no direct or statistical evidence of age discrimination. Furthermore, no one replaced him, but rather his work was assumed by his co-workers. Instead, Stein asserts that the reasons given by the defendant for discharging him were pretextual, and therefore the jury may infer that the defendant intentionally discriminated against him on the basis of age. Plaintiff seeks to show that the rationale provided for his dismissal was pretextual by alleging that he was treated differently from others with similar productivity levels. Additionally, Stein asserts that his productivity did not change appreciably over his final ten year period yet his supervisors did not complain about his performance when he was fifty-four, but voiced concern when he approached sixty-four.

Although using Stein's method of calculation his productivity was almost average

---

**4.** He argues that Washington editors, because of their close contact with Congress and with executive agencies, have easier access to a high volume of source material, and therefore it is unfair to compare his productivity with them.

**5.** excluding Washington, D.C. based editors

for Aviation Week Magazine, Stein measures productivity based on the number of columns written, while his employer relies on the number of by-lines. Stein contends that measuring productivity by the number of by-lines is an inaccurate and unfair method of assessing output, but he does not offer any evidence that this method was chosen to discriminate against him on the basis of age, or even any proof that the company recently switched its way of calculating productivity. Most likely, Aviation Week simply found it far easier to keep track of the number of by-lines than the number of columns. By his own admission Stein wrote less by-line stories than other editors, even compared only with those outside of Washington. Thus, since there is no reason to believe that defendant intentionally chose a technique for measuring output in order to disadvantage Stein, plaintiff's allegations of average productivity do not yield any reason to infer discrimination.

Next, even if a jury determined that Stein's performance in terms of productivity was consistent over the last ten years, such a pattern of low output does not give rise to an inference of discrimination. Although his employer's failure to take disciplinary action until the last four years might raise a shadow of a doubt regarding its motivation, a reasonable juror on the basis of these facts could not infer age discrimination. Stein was 54 years old ten years ago, already well within the age group protected by ADEA, when his employer allegedly ignored performance similar to that which earned him a poor evaluation six years later. It is difficult to understand why defendant would discriminate against him on the basis of age when he was 60, but not at 54.

Stein's poor performance reviews suggest a far more likely reason for his dismissal. Unlike the plaintiff in *Ramseur* who the Second Circuit found had established an inference of discrimination by showing that the reason given for her discharge was pretextual, Stein cannot point to outstanding or even satisfactory evaluations up to the time of his dismissal. *See Ramseur*, 865 F.2d at 466. His supervisors clearly expressed dissatisfaction with his work during the last three years of his employment, regardless of how they evaluated him ten years earlier. The Court finds it unlikely that Stein's employers would expend the effort to create a three year paper trail merely to establish a pretext for firing plaintiff. In short, Stein would like us to draw an inference of discrimination from very weak circumstantial evidence.

Judges in this District have granted summary judgment for failure to establish a prima facie case of age discrimination in instances in which the plaintiff provided greater or similar evidence of discrimination. For example, in *Corcoran v. Gab Business Serv., Inc.*, 723 F.Supp. 966, 968–69 (S.D.N.Y.1989) the court found that two comments regarding the employee's age by people not involved in his termination was insufficient to establish a prima facie case. Similarly, in *Littman*, 709 F.Supp. at 466–67, plaintiff's assertion that he knew no older persons working at the company was not enough.

Even though the plaintiff's burden of establishing a prima facie case is "not onerous," *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094; *Sweeney v. Research Foundation of the State University of New York*, 711 F.2d 1179 (2d Cir.1983) (citing *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)), "[a] plaintiff must nevertheless offer concrete evidence from which a reasonable juror could return a verdict in his favor." *Dister*, 859 F.2d at 1114. Stein has failed to meet even this minimal burden. Making all inferences in favor of Stein, he has not established an issue of material fact, which if decided in his favor, would enable a jury to render a verdict for him. His evidence reduces to bald allegations of discrimination, and this is insufficient to establish a prima facie case of age discrimination. *See Littman*, 709 F.Supp. at 465 (S.D.N.Y.1989).

The Court also holds that Stein fails to demonstrate pretext, as required by the *McDonnell Douglas* and *Burdine* Court's three-step test. McGraw–Hill alleges it

fired Stein because of his low output. The Court in essence has upheld the defendant's contention by finding that Stein was not qualified for his job in that his productivity was insufficient. The Court also has determined that Stein was not fired under circumstances giving rise to an inference of discrimination. The plaintiff therefore cannot establish that the reason given for his discharge was pretextual. *See Plaisner v. New York City Human Resources Admin.*, 50 Empl.Prac.Dec. (CCH) ¶ 38,956, at 57,127, 1989 WL 31495 (S.D.N.Y.1989).

For the foregoing reasons the Court grants defendant's summary judgment motion dismissing plaintiff's ADEA claim. The Court also grants defendant's summary judgment motion and dismisses Stein's New York Human Rights Law claim, because the "same elements and burdens of proof apply" to a discrimination claim under the ADEA and New York's Human Rights Law. *Vaughn v. Mobil Oil Corp.*, 708 F.Supp. 595, 599 (S.D.N.Y.1989).

## II. *Severance Pay*

■ Plaintiff asserts that McGraw–Hill's refusal to pay him severance benefits violates its contractual obligations to plaintiff. Plaintiff relies on the terms of McGraw–Hill's Policies and Procedure Manual in asserting his claim to severance pay. The manual lays out when an employee may or may not receive a separation allowance. Even assuming arguendo that the terms of the manual constitute an implied part of his employment contract, *see Saunders v. Big Brothers, Inc.*, 115 Misc.2d 845, 454 N.Y.S.2d 787, 789 (Civ.Ct.1982), plaintiff fails to state a claim for benefit payments.

The manual describes the rationale behind McGraw–Hill's policy as follows: "McGraw–Hill considers itself obligated to provide extra payments only to employees terminated for reasons the company feels responsible for, including eliminating or changing a job, or placing a person in a job that he or she cannot handle even though trying." It then lists six instances when an employee may receive these benefits:

Separation allowance will be paid to regular employees with the necessary qualifying service who are terminated by the company because of: 1. Lack of qualifications for the position; 2. Changed requirements of the position; 3. Reduction of force. 4. Disability 5. Some other reason which the company assumes responsibility for and which is not the employee's fault. 6. Under rare circumstances, separation pay may be authorized for terminations deemed to be the employee's fault. Approval of the Senior Vice President—Human Resources is required in such cases.

The plaintiff does not allege that he falls into any of these six categories. Furthermore, the company, as represented by Mr. Stein's superiors, clearly does not "feel responsible for" Mr. Stein's termination. The letters and performance reviews indicate that the plaintiff's supervisors terminated him because they believed that Mr. Stein failed to write a sufficient number of articles. Thus Mr. Stein's situation fits neither the letter nor the spirit of the qualifications for severance pay.

Additionally, the company explicitly states in the manual that it does not pay a separation allowance if the employee: "is discharged for unsatisfactory performance due to absenteeism, tardiness, attitude, lack of application to job, misconduct, or other reasons *considered by management* to be the employee's fault." (emphasis added). The defendant has established that it discharged the plaintiff based on Stein's superiors' good faith beliefs that his productivity was too low. The plaintiff contends that the issue in a severance pay claim is whether the employer objectively had good cause to fire the employee, not the employer's perceptions of the employee's work. The cases the plaintiff cites for support, however, arise in the context of ERISA claims and contracts terminable "for cause," and plaintiff has withdrawn his motion to amend his complaint to allege an ERISA cause of action. In the instant case the manual makes it clear that a discharge for a reason that *the management* considers to be the employee's fault is sufficient to deny severance pay, even if a disinterested observer might find the employee not to be responsible.

The defendant's motion for summary judgment dismissing the severance pay claim therefore is granted. Furthermore, plaintiff's claims for severance pay, penalties, fees and liquidated damages pursuant to the New York Labor Law § 198 must be dismissed because plaintiff did not prevail on his wage claim. *See* N.Y.Lab.Law § 198 (restricting remedies under this section to those prevailing on their wage claims).

Because the Court has dismissed all the claims in this case, the clerk of the court is directed to remove this case from the active docket.

SO ORDERED.