Doris E. CLARKE, Plaintiff,

v.

David R. CARLUCCI, et al., Defendants.

No. 88 Civ. 7651 (JES).

United States District Court,
S.D. New York.

Oct. 19, 1993.

Doris E. Clarke, plaintiff pro se.

Seward & Kissel, New York City, for defendant Intern. Business Machines Corp., Anthony R. Mansfield, of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Defendant International Business Machines Corp. moves for partial summary judgment dismissing plaintiff's claim that it discriminated against her on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). For the following reasons, defendant's motion is granted.

## BACKGROUND

Plaintiff Doris E. Clarke ("Clarke") began her employment with defendant International Business Machines Corp. ("IBM") in 1970 as a keypunch operator. IBM 3(g) Statement dated November 2, 1992 ¶ 1. Since that time, she has received several promotions, and as of June 20, 1986, Clarke's fortieth birthday and the beginning of the period relevant for this lawsuit, she has been employed as an account marketing representative in the New York Media branch office. *Id.* ¶ 1, 3, 4.

At various times during the course of Clarke's employment with IBM, she has challenged her training, promotions, territory assignments, quota requirements, and compensation. First, on March 29, 1985, Clarke filed a charge with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC"), alleging that IBM engaged in discrimination against her based on her race, color, national origin and sex by denying her National Accounts Division ("NAD") training equivalent to the training her male and Caucasian counterparts received (the "1985 EEOC Charge"). *See* Second Amended Verified Complaint, annexed EEOC Charge dated March 29, 1985. Clarke eventually withdrew this charge when she signed a release of liability in exchange for IBM's promise to conduct an investigation pursuant to its internal grievance procedure. Plaintiff's Statement Pursuant to Local Rule 3(g) dated October 10, 1990 ¶ 7, 9. After the investigation, Clarke and IBM reached a settlement (the "1985 settlement"),

which included a cash payment and a promotion. *Id.* ¶ 26, 28.

On July 28, 1987, Clarke filed a second charge with the NYSDHR and the EEOC, in which she alleged that IBM discriminated against her based on her race, color, national origin, and sex, and retaliated against her for her 1985 EEOC Charge by assigning her a less lucrative account territory than other similarly situated employees received (the "1987 EEOC Charge"). *See* Second Amended Verified Complaint, annexed EEOC Charge dated July 28, 1987. On July 8, 1988, Clarke amended this charge to include claims of age discrimination (the "amended 1987 EEOC Charge"). *See* Second Amended Verified Complaint, annexed Amendment to the Complaint (ADEA) dated July 8, 1988. Thereafter, the EEOC concluded its investigation of Clarke's amended 1987 EEOC Charge and, on September 28, 1988, issued a right-to sue letter. *See* Second Amended Verified Complaint, annexed Notice of Right to Sue.

On October 28, 1988, Clarke filed a complaint in this Court against IBM and four individuals, David R. Carlucci, Edith A. Cassidy, Mark J. DeViney and Steven C. Solazzo, who were her supervisors at various times. Based upon the same facts alleged in the amended 1987 EEOC Charge, she alleged violations of 42 U.S.C. § 1981 (1988), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (the "ADEA"). Clarke also alleged various state law claims including fraud, claiming that she had not been promoted to the position of advisory marketing representative as promised verbally in the 1985 settlement.

By order dated August 23, 1989, on defendant's motion this Court dismissed Clarke's age claims against the individual defendants because Clarke did not name any of the individual defendants in her amended 1987 EEOC Charge, as required by 29 U.S.C. § 626(d), and because none of the individuals were served with a copy of the age discrimination charge. In addition, by order dated January 14, 1991, this Court dismissed the § 1981 claims against all of the defendants because Clarke's allegations did not meet the standard for § 1981 claims established in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

The remaining Title VII claims were adjudicated in a four-day bench trial (the "Title VII bench trial"). On September 17, 1991, the Court dismissed Clarke's Title VII claims, finding that Clarke failed to establish a prima facie case of discrimination or retaliation because "on the entire record in this case ... the plaintiff has not carried the burden of proving it is more probable than not that she was adversely treated either because she filed a complaint or because of her race and or her sex." Trial Tr. 638–39. At that time, the Court also dismissed the pendent state law claims because the evidence did not support them.

On November 4, 1992, IBM moved for summary judgment on Clarke's remaining claim of age discrimination based upon alleged unfavorable treatment in the promotional opportunities, territory assignments, quota requirements, training, compensation and appraisals provided to her by IBM.

## DISCUSSION

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), provides that it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Id.* This protection is provided to employees who are at least forty years old. 29 U.S.C. § 631(a).

■ ADEA cases are analyzed by applying the same well-established burden and order of proof standards that were developed for Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). *See Pena v. Brattleboro Retreat,* 702 F.2d 322, 323–24 (2d Cir.1983); *Stanojev v. Ebasco Servs., Inc.,* 643 F.2d 914, 919–20 (2d Cir.1981); *Geller v. Markham,* 635 F.2d 1027, 1032, 1034–35 (2d

Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). The Supreme Court has stressed that the primary focus of the *McDonnell Douglas* test is whether an employer treated an employee less favorably than other employees for an impermissible reason. *See Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *Montana v. First Fed. Sav. and Loan of Rochester,* 869 F.2d 100, 104 (2d Cir.1989).

When this test is applied in cases of alleged age discrimination, the "central question is whether [the] plaintiff has presented sufficient evidence to permit a reasonable fact-finder to conclude that age was a determinative factor in the employer's decision." *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 81 (2d Cir.1983); *Montana,* 869 F.2d at 104. In other words, merely proving that the plaintiff is treated differently than other employees is not enough, standing alone, to prove discrimination. Rather, a plaintiff must show not only that other employees are treated differently, but that the difference in treatment is due to the plaintiff's age. Because evidence of discrimination is not always explicit, however, employer patterns or practices may be used to establish a prima facie case. *Stanojev, supra,* 643 F.2d at 921.

▪ As the nonmoving party opposing a properly supported motion for summary judgment, Clarke must set forth specific facts that show there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). As the court stated in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986), the nonmoving party for summary judgment "must do more than simply show that there

is some metaphysical doubt as to the material facts." Clarke has failed to make this showing. All that Clarke has alleged here is that she has received unreasonable quota requirements and unprofitable territory assignments and has not received promotions or training according to a schedule she deems appropriate. She has not, however, provided facts that create an inference that IBM treated her differently from other similarly situated employees, much less that any alleged discrimination was based upon her age. Therefore, no rational jury could find that IBM discriminated against Clarke because of her age. Accordingly, summary judgment is appropriate, especially since the Court, for purposes of the motion, has available to it the full trial record of the Title VII trial, and since virtually the same evidence is relied on to support the age discrimination claims.

Clarke has submitted various oral argument transcripts and over sixty exhibits that were originally submitted during, and excerpts of the transcript from, the four-day Title VII bench trial (collectively "Title VII exhibits"), and documents that she has identified as AGE 1–25 ("age exhibits"). The age exhibits include exhibits that duplicate previous trial testimony or exhibits ("old age exhibits") and exhibits that have not been previously submitted to this Court ("new age exhibits").

Just as Clarke's former Title VII exhibits [1] and her old age exhibits [2] were held not to have established a prima facie case of Title VII discrimination, these exhibits do not establish a prima facie case of age discrimination claim. During the Title VII bench trial, the Court carefully considered these exhibits and determined that they fell far short of establishing a prima facie case of discrimination:

---

1. *See* Plaintiff's Trial Exhibits ("Pl. Exs.") 2, 27, 44, 50–51, 58, 64, 73, 76–77, 79, 85–87, 91, 93, 97, 110, 113, 118, 143, 186–87, 192–96, 214–16, 218, 221, 249, 408–10, 424, 427, 431–33, 451A–B, 460, 462, 612–13, 665–70, 672–73; Trial Tr. at 2–23, 384–466, 470–71, 609–63; March 27, 1992 Tr.; and May 28, 1992 Tr.

2. AGE 1 is identical in parts to and duplicative in substance of Pl.Ex. 136. Three of the four pages of AGE 2 duplicate Def.Exs. IBM–M, IBM–T and IBM–U. AGE 3 duplicates Pl.Exs. 128, 159, 166, Trial Tr. pp. 151–53 and Def.Ex. IBM–UU. AGE

6 substantively repeats Pl.Exs. 87, 128, 159, 166. AGE 9 is the same as Pl.Ex. "731–26." AGE 10 is the same as Pl.Ex. "731–28." AGE 15 is comprised of Pl.Exs. 603, 614, 653 and 713. AGE 16 is based on the same data contained in Pl.Ex. 655.5. IBM Memorandum dated November 4, 1992 at 17. AGE 19 is the same as Pl.Ex. 654. AGE 23 is the same as Def.Ex. IBM–S. In fact, Clarke objected to the admission of this exhibit into evidence in the Title VII trial on the ground of hearsay.

"[P]roof that her territories were terrible doesn't really prove anything in the absence of some proof that other people did not have similar territories.

"I don't think there is any evidence in this record that supports any inference of adverse action.... She hasn't proved to me that she was unfairly treated for any reason...."

Trial Tr. at 658.

Nor do the new age exhibits support any rational inference of age discrimination.

These exhibits are plagued by numerous problems. Clarke's statistical evidence in support of her age discrimination claim is based on inaccurate estimates of her colleagues' ages [3] and insufficient sample sizes.[4] Furthermore, many of Clarke's exhibits contain information that is irrelevant or innocuous.[5] Clarke has even submitted exhibits that indeed support IBM's motion for summary judgment.[6] Clearly, no rational jury could infer age discrimination based upon this record, including the former Title VII exhibits, the old and new age exhibits, and all

---

3. In AGE 8, 15 and 18, Clarke attempts to provide statistical evidence of discrimination by listing the age of various marketing personnel in her branch, New York Media. This evidence is not reliable, however, because although Clarke has attempted to estimate her colleagues' respective ages, she has listed the date of birth of many of those employees as "unknown." Without more definitive information, such charts cannot satisfy Clarke's burden of showing the existence of an issue of fact under the standard set forth in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* *supra,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Moreover, plaintiff's complaint that, because discovery has closed, she has been denied discovery on her colleagues' actual ages, *see* Plaintiff's Supplemental Memorandum filed July 10, 1992, is unavailing. Since this action was commenced in 1988, plaintiff has had more than ample time to conduct discovery and investigation. *See Baylis v. Marriott Corp.,* 906 F.2d 874 (2d Cir.1990). Therefore, the Court declines to deny summary judgment on Fed.R.Civ.Proc. 56(f) grounds.

In any event, even assuming that Clarke's estimates of her colleagues' ages are correct, the "Age Summary Charts" of AGE 15 are not probative on the issue of discrimination in the absence of some showing that she was treated less favorably than they were. Furthermore, in AGE 18, Clarke has provided birthdates of various employees in the position of "Trainee" that show that these entry-level employees were, for the most part, in their twenties and early thirties. However, as the court stated in *Pirone v. Home Ins. Co.,* 559 F.Supp. 306, 312 (S.D.N.Y.1983), *aff'd,* 742 F.2d 1430 (2d Cir.1983), "[t]he fact that entry level employees are uniformly younger than persons terminated clearly has no significance. Logic would seem to suggest that this would be the natural order of things."

4. In AGE 5A, Clarke attempts to provide statistical evidence by comparing herself to two white males who are also account marketing representatives. Such comparisons fall short, however, of the size and integrity requirements for statistical comparisons sufficient to create an inference

of age discrimination. *See, e.g., Mayor of Philadelphia v. Educational Equality League,* 415 U.S. 605, 621, 94 S.Ct. 1323, 1333, 39 L.Ed.2d 630 (holding that sample of thirteen is too small to be probative); *Haskell v. Kaman Corp.,* 743 F.2d 113, 121 (2d Cir.1984) (holding that ten terminations over an 11–year period is not statistically significant).

5. For instance, although Clarke's exhibits reflect a turbulent relationship between Clarke and IBM, they contain no indication whatsoever that those problems were in any way linked to age. *See* AGE 4, 12, 13, and 25.

In addition, plaintiff's submission of a letter dated April 23, 1992 that she wrote to the Court to complain, *inter alia,* that the Court's protective order precluded her from adequately assisting her lawyer in the Title VII trial is irrelevant to the issue of whether IBM treated her adversely. *See* AGE 17. Clarke has also submitted a letter to the Court dated September 23, 1991 from the attorney who prosecuted her Title VII claims. *See* AGE 24. In the letter, Clarke's attorney asked to be relieved from representing Clarke on her ADEA claim. It is inconceivable how the withdrawal of her attorney could create an inference that IBM discriminated against Clarke.

Finally, although AGE 2, 6, 11, 14 and 16 provide information about territory assignments, quota requirements, and account revenues, Clarke has failed to show how these documents create any inference of adverse treatment based upon age. Similarly, to the extent that these exhibits detail internal overviews of IBM personnel resources in 1985 and the first half of 1986, before Clarke turned forty, this information cannot create an inference that Clarke was adversely treated during the relevant years. *See* AGE 2, 6, 11, and 16.

6. In AGE 2 and 14, Clarke shows that the "lucrative" and highest earning potential accounts were assigned to an employee who is over 50 years old. In AGE 7, which comprises two notes scheduling Clarke to attend a workshop, Clarke shows that IBM did in fact provide her training. Moreover, AGE 22 provides evidence that em-

rational inferences which can be drawn from them.[7]

■ However, even assuming, *arguendo*, that Clarke had established a prima facie case of discrimination, summary judgment on Clarke's age discrimination claim would still be appropriate because Clarke is collaterally estopped from challenging this Court's alternative finding at the Title VII trial that IBM had established a legitimate business reason for its treatment of Clarke and, to wit, had

> "properly carried the burden of proving by a preponderence of the evidence that they treated her fairly and ... consistent with the overall business policies of the companies."

Trial Tr. p. 659. The doctrine of collateral estoppel precludes relitigation of an issue of fact or law necessary to a court's judgment in a suit on a different cause of action involving the same parties, *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), even if the first trial was, as here, a bench trial rather than a jury trial. *See Parklane Hosiery Co., Inc. et al. v. Shore*, 439 U.S. 322, 335, 99 S.Ct. 645, 653, 58 L.Ed.2d 552 (1979); *Bryan v. Chemical Bank*, 655 F.Supp. 322, 325 (S.D.N.Y.1987). *See also, Temple of the Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 185 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991).

■ The Court concludes that collateral estoppel bars relitigation of this issue for the following reasons. First, since Title VII and ADEA cases are both governed by the *McDonnell Douglas* standard, which allows a defendant to rebut a prima facie case of discrimination by proving a legitimate business reason, the issue of whether IBM can prove such a reason is identical with respect to both Clarke's Title VII and ADEA claims. *See Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). Second, IBM's legitimate business reason was actually litigated and actually decided in Clarke's four-day long Title VII trial. *Id.* Third, Clarke had a full and fair opportunity, through her counsel,[8] to litigate the issue of IBM's legitimate business reason at that trial. *Id.*

Finally, the Court's independent alternative holding that IBM satisfied its burden of showing a legitimate business reason was necessary to the determination of Clarke's Title VII claims assuming, *arguendo*, that Clarke had provided evidence to establish a prima facie case of discrimination. *Id.* The applicability of the doctrine of collateral estoppel is not affected by the fact that this Court's finding with respect to IBM's legitimate business reason is an alternative basis for its judgment: "The general rule in this Circuit is that 'if a court decides a case on two grounds, each is a good estoppel.' " *Gelb*, 798 F.2d at 45 (quoting *Irving Nat'l Bank v. Law*, 10 F.2d 721, 724 (2d Cir.1926) (L. Hand, J.)). *See also Winters v. Lavine*, 574 F.2d 46, 66–67 (2d Cir.1978).

Therefore, the Court's alternative finding at the Title VII bench trial that Clarke was

ployees older than Clarke received better evaluations.

7. Clarke has stated in her supplemental papers that Carlucci told her that Clarke "[did] not want to go to Dallas [to train] with those young kids." Clarke Memorandum dated January 15, 1993 at 2. This statement is not set forth in the Second Amended Verified Complaint and was never mentioned in eight days of deposition, during which Clarke was asked about the bases of her age claim and asked to identify discriminatory statements that were made. Clarke cannot now add a new basis for her age discrimination claim in the hope of creating a triable issue of fact. *See Perma Research and Dev. Co.*, 410 F.2d 572, 578 (2d Cir.1969); *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 315 (6th Cir.1989).

8. In her affidavit filed in response to the motion for summary judgment, Clarke, now *pro se*, has alleged that she was disadvantaged in the Title VII trial because "eyes as 'unspecialized' as [her attorney's] cannot tell the worth of an IBM (REDACTED) document without special aid." Clarke Aff. ¶ 11. The argument lacks merit. If Clarke truly believed her lawyer uncapable of handling all of her claims, she could have retained substitute counsel. Having failed to do so, her only recourse for any alleged deviation from professional standards is a malpractice claim. *See Kensington Rock Island Ltd. Partnership v. American Eagle Historic Partners*, 921 F.2d 122, 125–26 (7th Cir.1990). Indeed, if a claim of attorney malpractice were itself sufficient to avoid collateral estoppel, no fact finding or judgment would ever be final.

treated fairly by the company and that during the period alleged in the Second Amended Verified Complaint IBM acted for nondiscriminatory motives precludes relitigation of any claim by Clarke for discrimination based on race or age. *See Bryan, supra,* 655 F.Supp. at 325.

## CONCLUSION

Accordingly, for the reasons stated above, defendant's motion for summary judgment shall be and hereby is granted. The Clerk of the Court is directed to close the above-captioned action.

It is **SO ORDERED.**